STATE OF CONNECTICUT *v.* GONZALO C. AVILA
(5435)

BORDEN, BIELUCH and O'CONNELL, Js.

Argued November 12—decision released December 29, 1987

*Joseph G. Bruckmann,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*Robert A. Lacobelle,* deputy assistant state's attorney, with whom, on the brief, were *Donald A. Browne,*

state's attorney, and *Frederick W. Fawcett* and *Gary W. Nicholson,* assistant state's attorneys, for the appellee (state).

PER CURIAM. The defendant has appealed from the judgment of conviction, after a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (1). His sole claim on appeal is that the trial court erred by refusing to instruct the jury that the victim had made certain statements to the defendant which allegedly implicated the victim's involvement in an attack by others on the defendant following the incident giving rise to the charges here. We find no error.

The defendant was arrested and charged with the crimes of which he was convicted after he was identified by the victim, Robert Szymanski, as the man who had shot Szymanski during the course of an unsuccessful drug transaction in Bridgeport. At trial, both Szymanski and the defendant testified to a conversation between them which had taken place in the courtroom corridor during the course of the trial. Each man gave a different version of the verbal encounter. Szymanski testified that the defendant had threatened that "I am going to blow you away." The defendant claimed during his defense that Szymanski had at that time told him that "his friends took care of me," in reference to injuries suffered in an attack made upon the defendant between the time of his arrest and trial.

In its charge, the court instructed the jury pursuant to the state's request that the threat allegedly made to Szymanski by the defendant in the courthouse did not create a presumption of guilt, but could be considered as evidence "tending to prove the defendant's consciousness of guilt."[1] Defense counsel took an exception

---

[1] The court's jury charge relative to this incident was as follows: "[T]he state claims the defendant made threats to the victim, Mr. Szymanski. Such

to this instruction because of the absence of any reference in the charge to Szymanski's alleged statement about which the defendant had testified. The court declined to reinstruct the jury.

The defendant claims in his brief on appeal that the court erred in refusing "to provide the jury with guidance as to permissible inferences from the defendant's testimony concerning the same out-of-court incident for which it had provided the jury with an inference which could be drawn from the victim's version of the encounter." The defendant, who had claimed at trial that he acted in self-defense, argues now that such evidence of the victim's "violent character" was relevant as it corroborated the defendant's version of the shooting and was also "evidence of consciousness of wrongdoing by Szymanski." The defendant maintains that fairness dictates that the jury should have been "informed of their right to draw inferences favorable to the defendant from the victim's alleged statement to him, or in the very least, that they could find the defendant's testimony [regarding the corridor conversation] to have been more credible than that offered by the victim." We do not agree.

There is no merit to the defendant's claim that the jury instruction was erroneous because the jury was not also informed of the victim's alleged incriminating

conduct by a defendant does not create a presumption of guilt. You may consider such evidence, however, as tending to prove the defendant's consciousness of guilt. Conduct of this nature following alleged criminal activity is not sufficient itself to establish the defendant's guilt, but they are facts which, if you find proven, may be considered by the jury in light of all the other proven facts in deciding the question of his guilt or innocence. Whether or not the defendant did any of these things, and if so, whether it shows a consciousness of guilt and significant weight to be attached to such circumstances, is a matter to be determined by you, the jury. You should consider and weigh the conduct of the defendant. If you find such occurred in connection with all the other evidence in the case, you give it such weight as in your sound judgment it is fairly entitled to receive."

statement to the defendant. The defendant had testified as to the conversation between himself and Szymanski. Therefore, the evidence of the victim's comments was before the jury. The defendant's claim is predicated upon his argument that evidence of Szymanski's "violent character" was relevant in view of his claim that he acted in self-defense. *State* v. *Gooch,* 186 Conn. 17, 21, 438 A.2d 867 (1982). The defendant did not request that the jury be so instructed. Although an exception was taken to the court's charge as given concerning the corridor conversation, the defendant did not at that time make this claim that he now advances on appeal. He did not give this reason in the exception taken to the charge at trial. Practice Book § 854 (now § 852)[2] provided in relevant part as follows: "Immediately after the conclusion of the charge to the jury, counsel taking exception shall, out of the presence of the jury, state distinctly the matter objected to and the ground of the exception. The appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or an exception has been taken immediately after the charge is delivered by the party appealing."

We generally do not consider a claimed error regarding a charge unless the matter is covered by a written request to charge or an exception has been taken immediately after its delivery. *State* v. *Fullwood,* 193 Conn.

---

[2] "[Practice Book] Sec. 852. NECESSITY FOR REQUESTS TO CHARGE AND EXCEPTIONS [Amended June 23, 1986, to take effect Oct. 1, 1986]. The supreme court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of objection. Upon request, opportunity shall be given to present the exception out of the hearing of the jury."

238, 259, 476 A.2d 550 (1984); *State* v. *Alston,* 5 Conn. App. 571, 573, 501 A.2d 764 (1985), cert. denied, 198 Conn. 804, 503 A.2d 1186 (1986). In addition, the exception taken must " ' "state distinctly the matter objected to and the ground" ' " of the exception or objection. *State* v. *Williams,* 202 Conn. 349, 362, 521 A.2d 150 (1987); *State* v. *Hill,* 201 Conn. 505, 512, 518 A.2d 388 (1986); *State* v. *Cook,* 8 Conn. App. 153, 156, 510 A.2d 1383 (1986).

There is no error.

DAVID D'AMICO *v.* CLIFFORD J. WILLIS,
CHIEF OF POLICE OF THE CITY OF NEW BRITAIN
(4762)

SPALLONE, STOUGHTON and NORCOTT, Js.

Argued October 14—decision released December 29, 1987

*Joseph E. Skelly, Jr.,* for the appellant (defendant).

*F. Gina Gelb,* with whom, on the brief, was *Joan K. Alexander,* legal intern, for the appellee (plaintiff).

SPALLONE, J. The defendant chief of police for the city of New Britain appeals from the judgment of the trial court granting a writ of mandamus. The plaintiff has been the full-time dog warden of the city of New Britain since 1976, and is a civilian member of the New Britain police department. In his appeal, the defendant claims that the trial court erred in granting the writ of mandamus because (1) a writ of mandamus is an extraordinary remedy available only in limited circumstances, (2) the plaintiff did not have a clear legal right to a writ of mandamus, (3) the defendant did not have a mandatory duty to perform the act ordered by the writ of mandamus, and (4) mandamus is only available to compel an act which is ministerial in nature. He also claims that the court erred in requiring him to testify concerning the reasons why he refused to act as requested by the plaintiff. We find error in the trial court's granting of the writ of mandamus and therefore need not address the defendant's second claim of error.

The following relevant facts are not in dispute. In September, of 1983, the plaintiff became enrolled in the municipal police training academy (academy), pursuant to a directive issued by the defendant. At the time the defendant issued this order, he believed the plaintiff's successful completion of training at the academy was required by General Statutes § 7-294d.[1] The plain-

---

[1] "[General Statutes] Sec. 7-294d. POWERS OF COUNCIL. CERTIFICATION OF POLICE OFFICERS. CANCELLATION OR REVOCATION OF CERTIFICATION. AUTOMATIC CERTIFICATION. PART-TIME POLICE OFFICERS. INAPPLICABILITY TO STATE POLICE. (a) The municipal police training council shall have the following powers: . . .

"(11) To establish minimum educational and training standards for employment as a police officer in full-time positions, temporary or probationary positions and part-time or voluntary positions . . . ."

tiff attended the academy for approximately twelve to fourteen weeks, and successfully completed 440 hours of training. In order to qualify for certification by the municipal police training council (MPTC), however, the plaintiff was required to engage in an additional forty hours of in-house, practical training with the New Britain police department.

Following his return from the academy, the plaintiff requested that he be allowed to participate in the in-house training so as to complete his course requirements and receive his diploma. His repeated requests were refused. The defendant subsequently informed the plaintiff that he would not authorize completion of the training because he had been informed that dog wardens were *not* required by statute to be MPTC certified. The plaintiff then brought this action for a writ of mandamus. After a trial, the court rendered judgment granting the issuance of the writ.

"(b) No person may be employed as a police officer by any law enforcement unit for a period exceeding one year unless he has been certified under the provisions of subsection (a) of this section or has been granted an extension by the council. . . .

"(e) The provisions of this section shall apply to any person who performs police functions for twenty or more hours per week. The council shall establish criteria for situations in which the certification process required by this section shall apply to part-time police officers. . . ."

Many of the terms used above are defined in General Statutes § 7-294a. That statute provides in relevant part: " 'certification' means the issuance by the municipal police training council to a police officer of a signed instrument evidencing satisfaction by such police officer of the training requirement imposed by section 7-294d and signed by the council . . . 'law enforcement unit' means any agency, organ or department of this state or a subdivision or municipality thereof, whose primary functions include the enforcement of criminal or traffic laws, the preservation of public order, the protection of life and property, or the prevention, detection or investigation of crime; 'police officer' means a sworn member of an organized local police department, an appointed constable who performs criminal law enforcement duties, a special policeman appointed under section 29-18, 29-18a or 29-19 or any member of a law enforcement unit who performs police duties twenty or more hours per week . . . ."

The Superior Court is empowered to issue a writ of mandamus "in any case in which a writ of mandamus may by law be granted." General Statutes § 52-485 (a). "It is well established that mandamus will issue only if the plaintiff can establish: (1) that the plaintiff has a clear legal right to the performance of a duty by the defendant; (2) that the defendant has no discretion with respect to performance of that duty; and (3) that the plaintiff has no adequate remedy at law. *Chamber of Commerce of Greater Waterbury, Inc.* v. *Murphy,* 179 Conn. 712, 717, 427 A.2d 866 (1980)." *Vartuli* v. *Sotire,* 192 Conn. 353, 365, 472 A.2d 336 (1984); see also *Carruthers* v. *Vumbacco,* 4 Conn. App. 168, 172, 493 A.2d 259 (1985).

We conclude that the plaintiff, as a dog warden, does not have an absolute, clear legal right to training and to certification by the MPTC. This conclusion is based on our analysis of General Statutes § 22-331 (a).[2] This statute clearly provides that any requirements for education and training normally imposed on members of

---

[2] General Statutes § 22-331 provides in pertinent part: "(a) In each municipality of the state having a population of more than twenty-five thousand which has adopted the provisions of chapter 113, or otherwise provided for a merit system for its employees, the chief of police or such other appointing authority as the charter may designate shall, subject to the provisions of said chapter 113 or other merit system, appoint a full-time warden and such assistants as are deemed necessary to administer and enforce the laws relating to dogs. *Any person so appointed may be or become a member of the police department and for such purpose the legislative body of such municipality may waive any requirements as to age, sex, physical condition, education and training applicable to other members of the police department. . . .*" (Emphasis added.)

Although the transcript reveals that the existence of this statute was mentioned during the trial, it was done so perfunctorily and the trial court's memorandum of decision neither addresses the applicability of the statute to this case nor discusses the ramifications of its provisions on the issuance of the writ of mandamus. Nevertheless, we find the preliminary requirements of § 22-331 (a) to be met and, hence, conclude that the statute is applicable to this case. We take judicial notice of the facts that the city of New Britain has a population of more than twenty-five thousand; Con-

necticut State Register and Manual (1987) p. 606; and that the municipality has adopted a merit system for its employees. 30 Spec. Acts 404, No. 420, c. 3 (the codification of the charter of the city of New Britain); see also General Statutes § 52-163; *State* v. *Lindsay,* 109 Conn. 239, 241–42, 146 A. 290 (1929).