STATE OF CONNECTICUT *v.* ANTHONY DE MATTEO
(5201)

DUPONT, C. J., BORDEN and O'CONNELL, Js.

Argued December 1, 1987—decision released March 8, 1988

*Jay C. Lyons,* with whom were *Andrea McDonald* and, on the brief, *Richard A. Johnson,* for the appellant (defendant).

*Mitchell S. Brody,* deputy assistant state's attorney, with whom, on the brief, was *Michael Lawlor,* former deputy assistant state's attorney, for the appellee (state).

BORDEN, J. The defendant appeals from the judgment of conviction, after a jury trial, of robbery in the third degree in violation of General Statutes § 53a-136, and larceny in the second degree in violation of § 53a-123. He claims that the trial court erred (1) in refusing to suppress the victim's out-of-court and in-court identifications of the defendant, (2) in summarizing in its charge to the jury only the evidence favorable to the state on the disputed issue of identity, (3) in instructing the jury regarding drawing inferences from circumstantial evidence, and (4) in denying his motion to correct an illegal sentence, based on his claim of double jeopardy. We find no reversible error.

The jury could have reasonably found the following facts: On the afternoon of January 7, 1985, Mary Ellen Rockwell exited from a New Haven restaurant owned by her and entered an adjacent alley, carrying three bags containing cash, check and credit card proceeds totalling more than $3500. In the alley, Rockwell observed an individual crouching behind a nearby

dumpster. The individual approached Rockwell, pushed her to the ground, took the bags, and ran away.

Although a nylon stocking was pulled over the robber's face, Rockwell was able to give the police a description of her assailant's age, height, race, build, facial features, and clothing. Three days later, the police took Rockwell to the parking lot at the defendant's place of employment and simply told her to observe individuals at that location. After a number of individuals, including about seven white males, entered the parking lot, the defendant, a white male, arrived at the location. Thereupon, Rockwell identified the defendant as her assailant.

I

The defendant contends that the identification procedure used by the police at his place of employment was unnecessarily suggestive and the resulting identification was unreliable. He also claims that the victim's in-court identification of him was tainted by the out-of-court identification and should have been suppressed. We disagree.

In order to succeed on his motion to suppress the identification evidence, the defendant was required to prove (1) that the identification procedures were unnecessarily suggestive, and (2) that the resulting identification was not reliable in the totality of the circumstances. *State* v. *Boucino,* 199 Conn. 207, 218–19, 506 A.2d 125 (1986). The defendant argues that the challenged identification procedure was unnecessarily suggestive for a variety of reasons. Our Supreme Court has upheld the validity of "public place" identifications similar to that used in the present case. See, e.g., *State* v. *Ruiz,* 202 Conn. 316, 320–23, 521 A.2d 1025 (1987); *State* v. *Amarillo,* 198 Conn. 285, 291–93, 503 A.2d 146 (1986). As in *Ruiz,* the defendant here has failed "to specify any action of the police that can fairly be charac-

terized as misconduct related to the identification";
*State* v. *Ruiz,* supra, 320; "[h]e does not maintain that
the officers accompanying [the witness] did anything
to induce her to select the defendant from the many
people she observed as she sat in the parked car." Id.
"Therefore, although the victim believed that she was
[present in the parking lot] to view a possible suspect,
she was not presented with the defendant in a man-
ner suggesting that the police believed him to be her
assailant. The defendant was viewed . . . in a public
place. The police officer[s] escort[ing] the victim . . .
did not direct any attention to the defendant nor ask
the victim any questions concerning the defendant."
*State* v. *Amarillo,* supra, 292. Accordingly, the iden-
tification procedure used here was not impermissibly
suggestive, and the trial court properly denied the
defendant's motion to suppress the victim's in-court and
out-of-court identifications.

## II

The defendant's second claim of error merits little
discussion. While summarizing the evidence in the
course of its charge to the jury, the court stated: "But,
at any rate, at the parking lot at Porto's, as I recall
her testimony, [the victim] recognized the defendant
Anthony De Matteo as the person who in fact robbed
her." The defendant contends that this portion of the
instruction constitutes error because it "unfairly and
unnecessarily highlighted the state's evidence." For all
of the reasons set forth in *State* v. *Storlazzi,* 191 Conn.
453, 464–67, 464 A.2d 829 (1983), we likewise conclude
that "[t]he charge was a quite proper and balanced
exercise of the judicial function of instructing the jury
on the respective functions of court and jury. . . . The
instructions, read in their entirety, did not direct or
advise the jury on how to decide the matter, and fairly
presented the case to the jury in such a way that no

injustice was done to the defendant." Id., 467; see also *State* v. *Avila,* 13 Conn. App. 120, 123–24, 534 A.2d 913 (1987) (per curiam).

## III

In his third claim of error, the defendant challenges the court's instruction to the jury regarding circumstantial evidence,[1] claiming that the instruction unconstitutionally diluted the state's burden to prove all the elements of a crime beyond a reasonable doubt. Although the defendant failed to object or except to this instruction at trial, we review this claim under the doctrine of *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), because it implicates a fundamental constitutional right. *State* v. *Hufford,* 205 Conn. 386, 406, 533 A.2d 866 (1987); *State* v. *Biggs,* 13 Conn. App. 12, 20, 534 A.2d 1217 (1987).

Affording the defendant's claim the appropriate scope of review; see, e.g., *State* v. *Gonzalez,* 205 Conn. 673, 690–92, 535 A.2d 345 (1987); *State* v. *Hufford,* supra, 407–408; *State* v. *Robinson,* 204 Conn. 207,

[1] The court instructed the jury on circumstantial evidence as follows: "Proof beyond a reasonable doubt does not mean that you must have direct evidence supporting a fact. You may apply the rule of circumstantial evidence. This rule involves the offering of evidence of facts from which you are asked to infer the existence of another fact or a set of facts. Such an inference may be made provided two elements in the application of this rule are satisfied.

"First, that the fact from which you are asked to draw the inference has itself been proven beyond a reasonable doubt and secondly, that the inference asked to be drawn is not only logical and reasonable, but is strong enough so that you can find that it is more probable than not that the fact to be inferred is true.

"It is your right to draw inferences if you conclude that the facts you find proven reasonably establish other facts by reason and logic and are not the result of speculation, surmise or guesswork.

"If from the facts you find proven beyond a reasonable doubt, you reasonably do infer other facts, you may then use the facts so inferred as a basis for a further inference that other facts exist, including the facts going to establish the guilt or the innocence of the defendant."

210–11, 527 A.2d 694 (1987) (per curiam); *State* v. *Mullings,* 202 Conn. 1, 12–14, 519 A.2d 58 (1987); *State* v. *Biggs,* supra, 21–23; *State* v. *Walker,* 9 Conn. App. 373, 376–77, 519 A.2d 83 (1986); *State* v. *Farrar,* 7 Conn. App. 149, 152–56, 508 A.2d 49, cert. denied, 200 Conn. 805, 512 A.2d 229 (1986); we find that this claim is controlled by *State* v. *Farrar,* supra, in which a nearly identical charge was challenged on appeal. As in *Farrar,* "[w]e conclude, therefore, that although it was error for the court to charge as it did, considering the overall charge and its likely effect on the jury, it is not reasonably possible that the jury was misled. . . . The error, therefore, was not reversible." (Citation omitted.) Id., 156.

## IV

In his final claim of error, the defendant contends that the court erred in denying his motion to correct an illegal sentence. The defendant was sentenced to seven years for larceny in the second degree in violation of General Statutes § 53a-123 (a) (3),[2] and three years for robbery in the third degree in violation of General Statutes § 53a-136,[3] with the sentences to run con-

---

[2] General Statutes § 53a-123 (a) (3) provides in pentinent part: "(a) A person is guilty of larceny in the second degree when he commits larceny as defined in section 53a-119 and: . . . (3) the property, regardless of its nature or value, is taken from the person of another . . . ."

"Larceny" is defined in General Statutes § 53a-119 as follows: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ."

[3] "A person is guilty of robbery in the third degree when he commits robbery." General Statutes § 53a-136 (a). "Robbery" is defined in General Statutes § 53a-133 as follows: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

secutively. In his motion, the defendant claimed that "multiple punishment for larceny [in the second degree] and robbery [in the third degree] arising out of the same set of facts is a violation of the double jeopardy protection of [the] Connecticut and the United States Constitution[s]."[4]

"The double jeopardy prohibition [of the fifth amendment to the United States constitution] applies to the states because of the fourteenth amendment to the United States constitution. *State* v. *McCall,* 187 Conn. 73, 89, 444 A.2d 896 (1982). Double jeopardy attaches where multiple punishments are imposed for the same offense in a single trial. Id. The question to be resolved is whether the two offenses charged are actually one. It must be determined, by an examination of the statutes, the information, and the bill of particulars, if any, and exclusive of the evidence introduced, whether proof of the violation of one statute requires proof of the violation of the other statute. If the elements of the greater offense include all of the elements of the lesser offense, then double jeopardy attaches. Id., 91; see also *State* v. *Amaral,* 179 Conn. 239, 425 A.2d 1293 (1979). '[T]he test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not.' *Blockburger* v. *United States,* 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932)." *State* v. *Harris,* 11 Conn. App. 397, 402–403, 527 A.2d 724, cert. denied, 205 Conn. 801, 529 A.2d 719 (1987).

[4] The defendant's motion to correct an illegal sentence and his preliminary statement of issues to this court both base this claim on federal and state constitutional grounds. In his brief, however, the defendant only refers to the federal constitution with respect to this claim of error. We therefore consider any claim of error based on state constitutional grounds to be abandoned. *Pepe* v. *New Britain,* 203 Conn. 281, 282 n.1, 524 A.2d 629 (1987).

The defendant argues that a conviction for robbery presupposes the commission of a larceny, and that therefore the larceny conviction here did not require proof of any additional fact which the robbery conviction did not. We disagree.

The defendant correctly points out that a conviction for robbery presupposes the commission of a larceny. This, however, does not necessarily lead to the conclusion that double jeopardy principles have been violated. See *State* v. *Boucino,* supra, 222–24; see also *In re Juvenile Appeal (84-4),* 1 Conn. App. 642, 645, 474 A.2d 485 (1984) (evidence insufficient to sustain conviction of larceny in the second degree held sufficient to sustain conviction of robbery in the third degree). Rather, we must examine the statutes and the information charging the defendant with these crimes to determine whether each charge requires proof of a fact which the other does not. In making this determination, we are concerned with theoretical possibilities, and do not focus on the evidence presented. *State* v. *Brown,* 163 Conn. 52, 60–63, 301 A.2d 547 (1972); *State* v. *Harris,* supra, 402–403.

It is clear that § 53a-123 (a) (3) and § 53a-136 each require proof of a fact which the other does not. Larceny from the person pursuant to § 53a-123 (a) (3) requires an actual trespass to the person of another; it is a conceptually separate and distinct offense from simple larceny, which requires only proof of a taking of property with intent permanently to deprive the owner of possession. *In re Juvenile Appeal (84-4),* supra, 645. In *State* v. *Crowe,* 174 Conn. 129, 134, 384 A.2d 340 (1977), our Supreme Court aligned itself with those courts which define a larceny "from the person" as "requir[ing] a taking from the actual person," as opposed to "a taking of property in the possession and control of the owner. . . . In our view, larceny from the person requires an actual trespass to the person

of the victim. Because of the trespass to the person, the offense is a serious crime in itself so that the value of the property stolen does not enter into the magnitude of the crime. On the other hand, the removal of the property from the presence or control of the victim lacks such a trespass and is insufficient to constitute larceny from the person. We are, therefore, in accord with the rule that larceny from the person is a separate and distinct offense from that of simple larceny." Id. The larceny which underlies a conviction for robbery in the third degree, however, only requires proof of a simple larceny together with the use or threatened use of force. *In re Juvenile Appeal (84–4)*, *supra.*

Larceny in the second degree, as charged in the state's long form information, required proof that the defendant "with intent to deprive another of property or to appropriate the same to himself or a third person . . . wrongfully took, obtained and withheld property from the person of Mary Ellen Rockwell . . . ." Robbery in the third degree, as charged in that information, required proof that the defendant "did use physical force upon Mary Ellen Rockwell in the course of committing a larceny for the purpose of compelling the owner of property to deliver up that property. . . ."

Under this information, it was possible, in the course of committing a larceny, to "use physical force upon Mary Ellen Rockwell" for the purpose of compelling her "to deliver up" her property, without also taking property from her person. For example, one can imagine a scenario in which the defendant, in the course of committing a larceny from Rockwell, used physical force upon her for the purpose of compelling her to deliver up property of hers which was in her presence or control but which was not taken from her person. Thus, under this information, the conviction of larceny in the second degree required proof of a fact, namely,

a taking from the actual person of the victim as opposed to a taking from her presence and control, which the conviction of robbery in the third degree did not require. Accordingly, the defendant's convictions for larceny in the second degree and robbery in the third degree were not constitutionally defective, and the separate sentences imposed for those offenses were proper.

There is no error.

In this opinion the other judges concurred.