STATE OF CONNECTICUT *v.* JORGE RAMIREZ
(5250)

DUPONT, C. J., BORDEN and SPALLONE, Js.

---

Argued April 5—decision released September 20, 1988

*Neal G. Cone* and *Katherine F. Sullivan,* certified legal interns, with whom were *Michael R. Sheldon, Timothy H. Everett* and, on the brief, *Todd D. Fernow,* for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *John C. Smriga,* assistant state's attorney, for the appellee (state).

SPALLONE, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of the crime of attempted robbery in the first degree, in violation of General Statutes §§ 53a-49 and 53a-134 (a) (3). The defendant claims that the trial court erred (1) in refusing to instruct the jury that an unfavorable inference could be drawn from the state's failure to produce a witness, (2) in failing to instruct the jury, sua sponte, on the victim's interest in the case, and (3) in allowing into evidence, without any limiting instruction, evidence of the use of narcotics by the defendant. We find no error.

Evidence was introduced from which the jury could reasonably have found the following facts. On May 14, 1985, at approximately 9:30 p.m., the victim, Patrick Richmond, a taxi cab driver, had been dispatched via

radio to pick up a fare in front of a school on Highland Avenue in the city of Bridgeport. While Richmond was waiting for the fare, the defendant, wielding a knife in his left hand, approached the cab and demanded money. Richmond grabbed the defendant's left wrist. A struggle ensued, first in the cab and then on the street. During the struggle, Richmond gained possession of the knife. The defendant bit Richmond's hand, and Richmond bit the defendant's shoulder. During the altercation, Richmond stabbed the defendant in the leg. The defendant then left the scene in the direction of a nearby apartment house. Richmond started to drive away, but stopped the cab after calling and receiving instructions from his dispatcher to remain in the vicinity to await the arrival of the police.

When the police officers arrived, Richmond related the incident to them and they immediately began an investigation. Detective Michael DeCarlo followed a trail of blood to an apartment in a complex known as Green Apartments. A woman answered the door and, in response to DeCarlo's questions, told him that her brother had been stabbed and taken to a hospital. She also informed DeCarlo that her brother's name was Jorge Ramirez. DeCarlo then proceeded to Park City Hospital to speak to Richmond, who had been taken there. Upon his arrival at the hospital, DeCarlo learned that the defendant also was being treated in the hospital's emergency room. By coincidence, the defendant and Richmond were in adjoining cubicles. Richmond identified a jacket as having been worn by the defendant, and subsequently identified the defendant.

The defendant was arrested and subsequently tried before a jury for the crimes of attempted robbery in the first degree and assault in the second degree. The court directed a judgment of acquittal on the assault

charge, and the jury convicted the defendant on the charge of attempted robbery in the first degree. This appeal followed.

In his first claim of error, the defendant faults the trial court for its failure to charge the jury that it could draw an adverse inference from the state's failure to produce Chester Murach, the taxi company's dispatcher, as a witness in accordance with the principles enunciated in *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 675, 165 A.2d 598 (1960), and its progeny. The defendant claims that the trial court misconstrued the nature of the testimony which would have been elicited from this missing witness and, therefore, the trial court erred in determining that the witness' testimony would have been merely cumulative. We decline to review this claim due to the defendant's failure to comply with the mandates of our rules of practice.

Practice Book § 852, the rule applicable at the time of trial, provided in pertinent part: "Prior to the beginning of the arguments, sufficient copies of written requests to charge the jury must be filed with the clerk . . . . Requests shall be in separate and numbered paragraphs, each containing a single proposition of law clearly and concisely stated with the citation of authority upon which it is based, and the facts supported by the evidence to which the proposition would apply. . . ." See Practice Book §§ 852, 853, 854, as amended effective October 1, 1986. The defendant's request to charge, which was filed on the morning the jury charge was to be given, consisted of one sentence: "1. *Secondino* charge for State's failure to call the dispatcher as a witness." For us to accept the defendant's argument that this sentence "substantially complied" with the provisions of § 852 would effectively emasculate the requirement that parties file a request to charge.[1]

---

[1] We find especially disingenuous the defendant's statement that "[a]s the rule seeks clarity and brevity," his request to charge satisfies these

It is well established that "[t]he ever increasing refinement of our law justifies the cooperation of counsel in stating requests for jury instructions, and this cooperation is mandated, at least to the extent of substantial compliance with Practice Book § 852. The minor burden of cooperation imposed by this section is neither unreasonable nor novel." *State* v. *McIntosh*, 199 Conn. 155, 160–61, 506 A.2d 104 (1986). While neither this court nor our Supreme Court places undue emphasis on procedural requirements to the detriment of the substantive merits of a claim, the recent spate of decisions that have had occasion to address the necessity for adequate requests to charge leads us to believe that such admonitions are falling on deaf ears. See, e.g., *State* v. *Ostroski*, 201 Conn. 534, 518 A.2d 915 (1986); *State* v. *Hancich*, 200 Conn. 615, 513 A.2d 638 (1986); *State* v. *Robinson*, 14 Conn. App. 40, 539 A.2d 606 (1988); *State* v. *Bettini*, 11 Conn. App. 684, 528 A.2d 1180 (1987); *State* v. *Merritt*, 11 Conn. App. 628, 528 A.2d 863 (1987); *State* v. *Wright*, 9 Conn. App. 275, 518 A.2d 658 (1986), cert. denied, 203 Conn. 802, 522 A.2d 293 (1987).

In this case, the defendant's bald citation of *Secondino* is not a sufficient statement of a proposition of law, especially in light of the molding and refining of the missing witness charge that has taken place in subsequent cases. Neither does the request to charge specifically assert the facts in the case that would satisfy the two-prong test that is a prerequisite to the giving of a missing witness charge. See, e.g., *State* v. *Wood*, 208 Conn. 125, 139–41, 545 A.2d 1026 (1988); *Shelnitz* v. *Greenberg*, 200 Conn. 58, 74–75, 509 A.2d 1023 (1986). We must conclude that "[a] summary request such as this one does not comply with our rules of practice." *State* v. *Ostroski*, supra, 558.

goals. Our interpretation of § 852 does not require a sacrifice of substantive content for the sake of brevity.

Neither are we persuaded by the defendant's contention that an in-court discussion of whether the missing witness charge was warranted, held immediately before the court's charge to the jury, is an acceptable alternative to the rules of practice. First, the rules of practice do not give oral argument as an alternative to a written request to charge. Second, the purpose of the provision, that attorneys help rather than hinder the trial court in its determination of whether a particular instruction should be given; *State* v. *McIntosh,* supra, 161; is not well served by oral argument. Rather than affording the court time to scrutinize the requests and investigate the relevant case law, so as to arrive at the proper legal answer, oral argument is likely to require the court to commit to memory the arguments of both sides, or to pressure it into making an immediate decision on the issue.[2] We do not think it necessary or proper to burden the trial bench so.

The defendant, in his second claim, contends that the trial court erred in its failure to instruct the jury to determine the credibility of Richmond in the light of any motive for testifying falsely and inculpating the defendant.[3] See *State* v. *Cooper,* 182 Conn. 207, 210–12, 438 A.2d 418 (1980); *State* v. *Smith,* 16 Conn. App. 223, 228–29, 547 A.2d 102 (1988). The defendant acknowledges that no request to charge was submitted on this issue, nor was an objection raised or an exception taken after the giving of the charge; therefore, our review of this

---

[2] In fact, the defendant may have been able to avoid the necessity of raising the claim on appeal that the trial court misconstrued the nature of his request to charge had he given the court the time and the means to consider adequately his request.

[3] The defendant's version of the events was that the encounter with the complainant was not an attempted robbery but a simple "street fight." The defendant claims, therefore, that the complainant also could have been charged with assault had the jury disbelieved the complainant's claim that he had been attacked by the defendant.

claim is limited to a determination of whether plain error exists. See Practice Book §§ 852, 854 and 4185.

Review under the plain error doctrine " 'is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings.' *State* v. *Hinckley,* 198 Conn. 77, 87–88, 502 A.2d 388 (1985)." *State* v. *Robinson,* 14 Conn. App. 146, 151, 539 A.2d 1037 (1988). Compare *Voloshin* v. *Voloshin,* 12 Conn. App. 626, 630, 533 A.2d 573 (1987) (no plain error found) with *Smith* v. *Czescel,* 12 Conn. App. 558, 563, 533 A.2d 223 (1987) (plain error found).

We do not agree with the defendant's assertion that the trial court's failure to instruct the jury, sua sponte, regarding the complainant's interest in the outcome of the case is either an "obvious" error or a "truly extraordinary situation" so as to warrant a finding of plain error. "While this court does not favor unyielding adherence to rules of procedure where the interests of justice are thereby disserved, we have rejected the broad claim that a trial court has an independent obligation ' "to instruct sua sponte, on general principles of law relevant to all issues raised in evidence" '; *State* v. *Preyer,* 198 Conn. 190, 198 n.9, 502 A.2d 858 (1985) . . . . " *State* v. *McIntosh,* supra, 160.

Finally, the defendant avers that the trial court erred in admitting evidence of the use of narcotics by the defendant on the night in question, without instructing the jury that its consideration of this fact was to be limited solely to the issue of the defendant's credibility. Again, no request was made by the defendant that such a limiting instruction be given at either the time of the introduction of the evidence or during the jury charge. Our review of the treatment of this evidence at trial, limited to the confines of plain error, results in a determination that the trial court did not

err in failing to give, sua sponte, a limiting instruction. See *State* v. *McIntosh,* supra, 160; *State* v. *Preyer,* supra, 198.

During cross-examination, the defendant initially denied that he had taken any drugs on the night of the incident, although he did admit that he had been drinking beer. When confronted with the fact that the results of tests performed at the hospital that night revealed the presence of narcotics in his system, the defendant then confessed that he had ingested cocaine a half hour to an hour before the incident in question, and admitted that he was feeling the effects of the drug during his confrontation with the complainant.

In his brief, the defendant concedes that the state's reference to the use of narcotics was to impeach his credibility first by revealing his change in testimony, and second by putting in question his ability to recall adequately the events of that evening. Both of these areas are permissible lines of inquiry on cross-examination. See, e.g., *State* v. *Maldonado,* 193 Conn. 350, 362, 478 A.2d 581 (1984) ("[t]he purpose of impeachment is to undermine the credibility of a witness so that the trier will disbelieve him and disregard his testimony"); *State* v. *Esposito,* 192 Conn. 166, 176, 471 A.2d 949 (1984) ("[t]he capacity of a witness to observe, recollect and narrate an occurrence is a proper subject of inquiry on cross-examination").

Contrary to the argument of the defendant, nothing was said by the prosecution in its summation, or by the trial court in its charge, that would indicate to the jury that it could draw from the evidence of his drug use an inference that the attempted robbery was motivated by a need for money to support his drug habit. While the trial court did not specifically prohibit the jury from drawing such an inference, neither does a fair reading of the charge as a whole indicate that the charge affir-

matively encouraged the jury to utilize this evidence for anything but a consideration of the defendant's testimonial capacity. Under these circumstances, the court, in the absence of a proper objection or request, had no duty to instruct the jury, sua sponte, that its use of the evidence was limited.

There is no error.

In this opinion the other judges concurred.