STATE OF CONNECTICUT *v.* BENJAMIN BELL
(8134)
(8135)

O'CONNELL, FOTI and CRETELLA, Js.

Argued June 12—decision released September 25, 1990

*Donald D. Dakers,* public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.,* deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Elpedio Vitale,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of four counts of the crime of attempted assault in the first degree in violation of General Statutes §§ 53a-59 (a) (1) and 53a-49, and of one count of the crime of assault on a peace officer in violation of General Statutes § 53a-167c (a) (1) in the first case, and from the judgment of conviction of assault in the first degree in violation of General Statutes § 53a-59 (a) (1) in the second case.[1] The defendant claims that the trial court should have instructed the jury on intoxication pursuant to General Statutes § 53a-7.[2] We affirm the trial court's judgment.

Evidence was introduced from which the jury could reasonably have found the following facts. At approximately 9 p.m. on March 15, 1988, Pamela Benson went

[1] Both files were joined for trial, and remain consolidated for purposes of this appeal. In the first case, the defendant was sentenced to a term of imprisonment of twenty years, execution suspended after ten years, followed by five years of probation on the four counts of attempted assault, with a concurrent term of five years for the charge of assault on a peace officer. In the second case, he was sentenced to a consecutive term of ten years, execution suspended after five years, followed by five years of probation for the charge of assault in the first degree. The total effective sentence imposed was thirty years imprisonment, suspended after fifteen years, with probation of five years to follow.

[2] "[General Statutes] Sec. 53a-7. EFFECT OF INTOXICATION. Intoxication shall not be a defense to a criminal charge, but in any prosecution for an offense evidence of intoxication of the defendant may be offered by the defendant whenever it is relevant to negate an element of the crime charged, provided when recklessness or criminal negligence is an element of the crime charged, if the actor, due to self-induced intoxication, is unaware of or disregards or fails to perceive a risk which he would have been aware of had he not been intoxicated, such unawareness, disregard or failure to perceive shall be immaterial. As used in this section, 'intoxication' means a substantial disturbance of mental or physical capacities resulting from the introduction of substances into the body."

to the Taurus Cafe in New Haven where she met her cousin, Timothy Maybanks. While inside the bar, she observed the defendant, whom she knew, sitting at a table with a number of other young men, none of whom appeared to be old enough to drink. Neither she nor her cousin observed the defendant consume any alcohol while inside the bar.

Benson had one beer and went outside to get some air. As she exited, she observed the defendant standing at the interior door holding a forty ounce bottle of beer, arguing with one of the owners of the bar, who apparently was preventing the defendant from reentering the bar with the beer. The defendant pushed Benson as she walked by. About five minutes later, Benson reentered the bar and observed that the defendant was still standing at the door.

Approximately ten minutes later, Maybanks left the bar and a short time later Benson followed him. As she exited the bar, the defendant, without saying anything, swung the forty ounce bottle of beer like a baseball bat and hit Benson in the face. There was a considerable amount of beer in the bottle when it made contact with her face and broke. Benson landed on the ground from the force of the impact and lost consciousness for about two minutes. After regaining consciousness, she realized that some of her teeth were hanging out of her mouth and her face and mouth were bleeding. She could not move. It was later determined that Benson had sustained fractures to both her lower and upper jaw that required surgery. These injuries constituted a serious impairment to her health.

Maybanks observed the defendant strike his cousin with the beer bottle. Maybanks grabbed the defendant, but he was able to break away. As the defendant ran away, the defendant promised in a loud and violent tone that he would be back. Emergency medical personnel

and four New Haven police officers arrived at the scene. Approximately three to five minutes after the police arrived, the defendant returned. As he approached from a nearby alley, he fired about five rounds from a shotgun in the direction of the four officers. Shotgun pellets struck trees and buildings around the officers. One officer's leg was hit. When the officers returned fire, the defendant escaped down an alley. A canine unit was dispatched and the dog, using the scent from a coat worn by the defendant and found in the alley, led the police to the home of the defendant's mother, Gloria Bell. With Gloria Bell's consent, the police searched the apartment unsuccessfully for the defendant.

One month later, the defendant was arrested, and held in pretrial confinement at the New Haven correctional center. Fred Williams, a guard who knew the defendant, testified as follows concerning a conversation he had with the defendant:

"[Williams]: I said I heard you was getting crazy out on the street. His response was yes, I assaulted a girl and I just went off, I was sessed up, sessed up.

"[The Court]: Just a minute, read that answer back. (Whereupon, the answer was read back.)

"[Prosecutor]: Had you asked him specifically about Pamela Benson?

"[Williams]: No.

"[Prosecutor]: And did you ask him about the police after he made that remark?

"[Williams]: Yes.

"[Prosecutor]: And what exactly did you say and what was his response?

"[Williams]: I said, the police too? He said, I just went crazy."

Following Williams' testimony, the state and the defense rested and the jury was excused. The defendant's counsel orally argued to the court that an instruction on the effect of intoxication was appropriate under the facts of the case.[3]

The following day, the court asked if there were any requests to charge. Both the state and the defendant responded that they had no formal request to charge.[4] After closing arguments, the jury received its instruction from the court. The court's charge did not include instruction on the effect of intoxication. There were no exceptions taken from the jury charge.

During the course of deliberations the jury sent out a question. The court first read the question into the record: "The question that was sent out, and I'll read it again so there's no misunderstanding as to what ques-

---

[3] The only request on record for an instruction on the defense of intoxication is a brief exchange where the court verified, and defense counsel agreed and confirmed, that the only testimony leading the defendant to request the instruction was Williams' testimony that the defendant had described himself as being "sessed up" at the time of the incident. Defense counsel stated that, although he had never heard the expression before and was unaware of its meaning, he believed that the witness' use of the term "sessed up" alone warranted the instruction in case the jury attached some significance to it. The court then emphasized that the issue it must first consider was whether there was sufficient evidence to warrant the requested instruction. The court then stated that it was "inclined to think there was insufficient evidence to warrant this instruction" because the witness had not used a commonly understood term such as "I was high" that "has a sufficient acceptance in society to mean being high on either drugs or alcohol," but it postponed ruling on the instruction.

[4] The defendant alleges that, on the morning of the day before the jury was instructed, he was informed by the court that it would not instruct as to the effect of intoxication on the required specific intent. The defendant therefore did not file a written request to charge on this point, and conceded at oral argument that his appeal is not based on the court's failure to instruct as requested.

tion you sent out, 'we need a definition of what constitutes . . . "intent" . . . . If someone is under the influence of drugs are they considered liable for 'first degree assault if their ability to reason is affected by drugs and intent is not necessarily clear?' . . ."

The court then instructed the jury as follows: "Insofar as your first question refers to drugs, if there had been evidence in this case of drug use by the defendant, which I do not recall any such evidence, there is an instruction you would have received with respect to how that should be considered in determining the question of intent. Since I heard no such evidence of drug use by this defendant at the time of the alleged incident, that instruction was not given. I would remind you that you are to decide this case based on the evidence that was presented before you, the facts as you find them to be, the reasonable inferences you may draw from the facts as you find them to be, and you are not to surmise, speculate or guess in connection with the case. As far as definition of intent, I will read you again, a person acts intentionally with respect to a result or conduct involved in an offense when his conscious objective is to cause such result or to engage in such conduct. Such intent need not be proved by direct evidence but may be inferred from all the facts and circumstances. You should infer such intent only if you are satisfied of it beyond a reasonable doubt. If there remains in your mind after considering all the facts and the circumstances you may find proven any reasonable explanation consistent with the innocence of the defendant then you cannot find the intent to exist. But if the facts and circumstances satisfy you beyond a reasonable doubt that he did have such an intent it is your duty to infer its existence and find it proven." Neither the state nor the defendant took an exception to this instruction.

We have consistently held that we will "not consider a claimed error regarding a charge unless the matter is covered by a written request to charge or an exception has been taken immediately after its delivery." *State* v. *Avila*, 13 Conn. App. 120, 123, 534 A.2d 913 (1987). The defendant submits that we should review his claim under *State* v. *Evans*, 165 Conn. 61, 66, 327 A.2d 576 (1973), as articulated in *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). His position is not that the court should have given the instruction he orally requested; see *State* v. *Ramirez*, 16 Conn. App. 284, 287, 547 A.2d 559, cert. denied, 209 Conn. 828, 552 A.2d 434 (1988); but rather that the question posed to the court by the jury was a question of fact rather than one of law, and that as such the court should not have considered the standard of "sufficiency of evidence."[5] In effect, the defendant argues that by its question the jury was saying, "We have found, factually, that the defendant was under the influence of drugs, now tell us how that affects his intent." The defendant contends that the court deprived the jury of its function as the finder of fact when it refused to instruct the jury on the effect of intoxication pursuant to General Statutes § 53a-7. We do not agree.

The defendant agrees that there may have been an inadequate evidentiary basis to require an instruction on intoxication, but he speculates that one or more jurors knew that "sessed up" means "high on marihuana."[6]

[5] The defendant impliedly argues that we should review this claim under the plain error rule of Practice Book § 4185.

[6] The defendant concedes that neither the trial court nor defense counsel understood the meaning of the term "sessed up," but asks us to take judicial notice of the meaning of the term by employing a certain named dictionary and an encyclopedia that deal with drugs. "As a general rule, this court will not take judicial notice of facts that were not available to the trial court at the time of trial." *State* v. *Siano*, 20 Conn. App. 369, 375, 567 A.2d 1231 (1989).

The term "sessed up" was never defined for the jury, nor did the jury ever ask for a definition. Neither the state nor the defendant offered any evidence as to the definition of the term. Further, there is no claim that the term "sessed up" has a definition that may be "taken as a matter of common knowledge which the jury is supposed to possess." *State* v. *Asherman,* 193 Conn. 695, 737, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985). The jury instructions should provide sufficient overall guidance for the jury. *State* v. *Rodgers,* 198 Conn. 53, 56, 502 A.2d 360 (1985). The term "sessed up" is not statutorily defined and does not have a legal meaning; *State* v. *MacFarlane,* 188 Conn. 542, 550–52, 450 A.2d 374 (1982); nor did the jury ask for its definition. The record indicates that the jury was evidently satisfied with the court's responses to its inquiry. See *State* v. *Avis,* 209 Conn. 290, 306, 551 A.2d 26 (1988), cert. denied, 489 U.S. 1097, 109 S. Ct. 1570, 103 L. Ed. 2d 937 (1989).

The question asked by the jury did not imply a fact found, nor could the court presume such, or speculate as to what one or more jurors might believe. The term "sessed up" is not one of common knowledge nor one that has an ordinary meaning due to ordinary usage. The court correctly instructed the jurors that they were to decide the case "based on the evidence that was presented before you, the facts as you find them to be, the reasonable inferences you may draw from the facts as you find them to be, and you are not to surmise, speculate or guess in connection with the case."[7]

The judgment is affirmed.

O'CONNELL, J., concurring. The defendant failed to file a written request to charge the jury on intoxica-

[7] During the jury selection process, the defendant's counsel asked potential jurors whether they could follow instructions regarding the defendant's use of alcohol or drugs.

tion nor did he take exception to the charge as given. See Practice Book § 852; *State* v. *Ramirez,* 16 Conn. App. 284, 287, 547 A.2d 559, cert. denied, 209 Conn. 828, 552 A.2d 434 (1988). Accordingly, I would decline to review his claim.

CRETELLA, J., dissenting. I cannot join in the majority opinion because I do not agree with the action taken by the trial court in response to the jury's question relating to intent. In response to that inquiry, the trial court's refusal to instruct the jury as to such effect that intoxication might have on the element of intent could possibly have led the jury to disregard what it found or could have found concerning evidence of intoxication.

The jury note was not of a general nature, questioning whether the jury could find the defendant guilty if he was intoxicated or under the influence of drugs. The jury asked, in part, "[if] someone is under the influence of drugs are they considered liable for 'first degree assault' if their ability to reason is affected by drugs and intent is not necessarily clear?" On the basis of the behavior of the defendant and the testimony that the defendant said he "was sessed up"and "just went crazy," the jury could have found that the defendant was under the influence of drugs or intoxicated. The jury's question indicates that at least one, and possibly more, of the jurors was considering whether the defendant was intoxicated or under the influence of drugs. The court was within its discretion in not initially charging the jury on the legal effect of intoxication, but, upon receiving the jury note, the court should have given the requested charge.

In response to the question, the court in its discretion could properly indicate that it did not recall any evidence of drug use and was correct in advising the

jurors that they should determine the fact from the evidence presented allowing them to draw reasonable inferences but cautioning them against any surmise, speculation or guess. The fact that the court did not recall evidence of intoxication, however, should not have prevented the court from instructing on intoxication since it was clear from the question posed that one or more of the jurors thought that there was evidence of intoxication. The court should not have then left the jury drifting in a sea of uncertainty as to what law would be applicable if it concluded that intoxication was involved. "The failure of the court to discharge its duty and clarify the instructions upon the request of the jury is in contravention to the mandate of Practice Book § 864." *State* v. *Fletcher,* 10 Conn. App. 697, 702, 525 A.2d 535 (1987), aff'd, 207 Conn. 191, 540 A.2d 370 (1988).

There is a question as to the reviewability of this claim not because the defendant did not object to the original jury charge, but because he did not object to the court's refusal to give the requested instruction in reply to the jury question. Ordinarily, unpreserved claims are not reviewed. *State* v. *Fletcher,* supra, 706. I would however, review this claim as an "exceptional circumstance" under *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989), because the record is adequate to support it, and because it involves the defendant's constitutional right to due process and a fair trial relating to an essential element of the crime, to wit, intent, and meets all of the other conditions of *Golding.*

I would remand the case for a new trial and, accordingly, must dissent.