## STATE OF CONNECTICUT *v.* STANLEY GOODRUM (12615)

Dupont, C. J., and Foti and Lavery, Js.

---

Argued March 17—decision released September 26, 1995

*James B. Streeto*, special public defender, for the appellant (defendant).

*Pamela S. Meotti*, deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *John Waddock*, assistant state's attorney, for the appellee (state).

LAVERY, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b),[1] conspiracy to sell narcotics in violation of General Statutes §§ 53a-48 (a)[2] and 21a-278 (b), possession of marijuana in violation of General Statutes § 21a-279 (c),[3] and five counts of violation of probation.[4] The defendant claims that (1) the evidence was insufficient to support his conviction of possession of narcotics with intent to sell and conspiracy, (2) the trial court should not have given a *Secondino* charge, (3) the trial

[1] General Statutes § 21a-278 (b) provides in pertinent part: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marijuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. . . ."

[2] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[3] General Statutes § 21a-279 (c) provides: "Any person who possesses or has under his control any quantity of any controlled substance other than a narcotic substance, or a hallucinogenic substance other than marijuana or who possesses or has under his control less than four ounces of a cannabis-type substance, except as authorized in this chapter, for a first offense, may be fined not more than one thousand dollars or be imprisoned not more than one year, or be both fined and imprisoned; and for a subsequent offense, may be fined not more than three thousand dollars or be imprisoned not more than five years, or be both fined and imprisoned."

[4] The defendant was initially charged in a single information with possession with intent to sell, conspiracy and possession of marijuana. He pleaded not guilty and elected a jury trial. On March 16, 1993, following the denial of his motion to suppress, the defendant entered a guilty plea to possession of marijuana and proceeded to trial on the remaining charges. Subsequently, an information was brought against the defendant alleging violation of probation based on the guilty plea for possession of marijuana.

court gave an incorrect consciousness of guilt charge, (4) the trial court should have given the jury an instruction on nonexclusive possession, and (5) the trial court wrongfully admitted evidence of marijuana seized from the defendant's home.

We affirm the conviction with respect to the charges of possession of narcotics with intent to sell by a person who is not drug-dependent, possession of marijuana, and violation of probation. We reverse the conviction on the charge of conspiracy to sell narcotics. We conclude that the evidence adduced at trial was insufficient as a matter of law to support the conviction on the conspiracy count.

The jury could have reasonably found the following facts. In January, 1992, the New Haven police conducted an undercover narcotics investigation that focused on three residences: 265 Dixwell Avenue, 377 Shelton Avenue and 35 Elizabeth Street. During the investigation, detectives saw the defendant enter and exit each location and saw him use a key to enter 265 Dixwell Avenue. On January 7, the detectives obtained a warrant to search all three residences.

On the morning of January 9, Detective Thomas Trochio and Detective Hilton Wright saw the defendant leave his residence at 377 Shelton Avenue and drive to 265 Dixwell Avenue where the defendant's brother, Moses Pipkin, and son resided. The detectives saw the defendant leave his car and enter 265 Dixwell Avenue carrying a brown paper bag. The defendant used a key to enter the front door of the building. The detectives did not see which apartment the defendant entered.

The detectives returned to the police station to assemble a team of police officers for the purpose of executing the search warrants. They returned to 265 Dixwell Avenue approximately thirty minutes later, knocked on the door to apartment A-1 and announced

that they had a search warrant. The defendant was not present. In the apartment were Pipkin and Gloria Daniels.

The police searched the apartment and found a brown paper bag with a McDonald's logo in which were 200 packets containing 7.06 grams of heroin. The packets were stamped with the words "raising hell" and wrapped in rubber bands. The police also recovered nineteen packets of heroin identical to those found in the brown paper bag, nine packets containing approximately 1.33 grams of cocaine found on Daniels, with the box for a beeper with instructions, a piece of wrapping paper addressed to the defendant at 265 Dixwell Avenue, and a Quaker Oats grits container filled with rubber bands. Written on the top of the grits container was "IOU Stan and Betty. 10-C 12-P." The officers arrested Pipkin and Daniels.

The police then proceeded to 377 Shelton Avenue to execute that portion of the warrant. The defendant and Ruth Ford were found there. Upon searching the defendant, the police found a beeper with the same serial number that was on the instructions in the beeper box found at 265 Dixwell Avenue and keys later determined to be for the front door to apartment A-1. When the police asked the defendant how much money he had in his wallet, he said, "$30 or $40." A subsequent search of the defendant's wallet revealed $307, mostly $20 bills.

At the Shelton Avenue residence, the police also found $1554.50, primarily in $1 bills, stored in a plastic water bottle, a jacket similar to that the defendant had been seen wearing earlier that day, six packets of marijuana, and a tray containing marijuana residue and seeds.

At trial, Pipkin testified that he had been hospitalized for three weeks and had returned to his apartment at

265 Dixwell on January 8. Pipkin stated that he gave the defendant the keys to his apartment while he was in the hospital, and that the defendant was the only person with keys to his apartment. He testified that the McDonald's bag was not in his apartment when he returned home on the evening of January 8, or when he left the apartment early the following morning.

Pipkin further testified that when he returned to his apartment on January 9, the defendant was leaving the building and was not carrying the paper bag. He denied that the 200 packets in the paper bag were his. He stated that he first learned of that bag when the police arrived shortly thereafter and found it during their search. Pipkin pleaded guilty to charges of possession of narcotics with intent to sell and conspiracy to sell narcotics.

Trochio testified that, in his experience and training, a user of heroin is not likely to be found with 200 packets of heroin. He also testified that the packaging of the heroin into $20 bags indicated a large scale drug operation. Wright testified that "P-dope" is a street term for heroin.

## I

The defendant's first claim is that there was insufficient evidence on the charge of possession of narcotics with intent to sell. He claims that there is no direct proof of his actual possession of the 200 packets of heroin found in a brown paper bag at 265 Dixwell Avenue, and that the circumstantial evidence failed to prove his constructive possession beyond a reasonable doubt. While we agree that the evidence linking the heroin to the defendant was largely circumstantial, we hold that it is sufficient to support the conviction.

"In accordance with well established principles, appellate analysis of a claim of insufficiency of the evidence requires us to undertake a twofold task. We

first review the evidence presented at the trial, construing it in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt . . . . In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. *State* v. *Sinclair*, 197 Conn. 574, 576, 500 A.2d 539 (1985), and cases there cited. *State* v. *Rollinson*, 203 Conn. 641, 665–66, 526 A.2d 1283 (1987)." (Internal quotation marks omitted.) *State* v. *Robinson*, 213 Conn. 243, 254, 567 A.2d 1173 (1989). "So far as probative force is concerned, there is no legal distinction between direct and circumstantial evidence." *State* v. *Gaynor*, 182 Conn. 501, 506 n.3, 438 A.2d 749 (1980).

The facts underlying this claim are not in dispute. Rather, the defendant now challenges the resultant inferences drawn by the trier of fact as improperly based on speculation and conjecture. See *State* v. *Somerville*, 214 Conn. 378, 389–90, 572 A.2d 944 (1990); *State* v. *Gaynor*, supra, 182 Conn. 503.

In order to "prove possession of a narcotic substance, the state must establish beyond a reasonable doubt that the accused knew of the character of the drug and its presence and exercised dominion and control over it. *State* v. *Delossantos*, 211 Conn. 258, 277–78, 559 A.2d 164, cert. denied, 493 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989); *State* v. *Alfonso*, 195 Conn. 624, 633, 490 A.2d 75 (1985) . . . ." (Citation omitted.) *State* v. *Lee*, 32 Conn. App. 84, 98, 628 A.2d 1318, cert. denied, 227 Conn. 924, 632 A.2d 702 (1993), cert. denied, 510 U.S. 1202, 114 S. Ct. 1319, 127 L. Ed. 2d 668 (1994). "Where, as in the present case, the contraband is not found on the defendant's person, the state must proceed

on the alternative theory of constructive possession, that is, possession without direct physical contact." *State* v. *Brunori*, 22 Conn. App. 431, 436, 578 A.2d 139, cert. denied, 216 Conn. 814, 580 A.2d 61 (1990). "Where the defendant is not in exclusive possession of the premises where the narcotics are found, 'it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference.' " *State* v. *Alfonso*, supra, 195 Conn. 633.

The statements and circumstances tending to buttress the inference of constructive possession are as follows. Trochio testified that the narcotics were discovered in a brown paper bag in apartment A-1 only thirty minutes after the police observed the defendant enter that same apartment building carrying a similar bag. Only the defendant and Pipkin had keys to the apartment, which suggests that one of them possessed the drugs. Pipkin denied any knowledge of the drugs. He testified that the drugs were not in his apartment the night of January 8 or when he left the apartment on January 9. Pipkin first learned of the drugs when the police found them in the paper bag in the apartment. Moreover, Pipkin saw the defendant leave the apartment building just before the search occurred, and testified that the defendant was not carrying the bag. Pipkin's testimony supports the inference that the defendant placed the drugs in the apartment on the morning of January 9. This inference gains more support from testimony that the defendant had keys to Pipkin's apartment when he was arrested.

Additionally, the police discovered a mailing wrapper addressed to the defendant at 265 Dixwell Avenue, apartment A-1. They also observed the defendant using a set of keys to enter 265 Dixwell Avenue on numerous occasions in the weeks preceding the search. The

defendant had keys to Pipkin's apartment when he was arrested, indicating the defendant's access to the apartment and exercise of control over its contents.

Moreover, in their search of the apartment, the police discovered a grits container with the following inscription on top: "IOU, Stan and Betty. 10-C, 12-P." Wright testified that "P-dope" is the street term for heroin. The jury could have interpreted the information on the box top to mean that the defendant, Stanley Goodrum, and "Betty" either owed or were owed ten bags of cocaine and twelve bags of heroin. Both interpretations are consistent with the defendant's possession of narcotics.

Also, the police recovered $307 from the defendant's person. When the defendant was asked how much money he had on his person, he stated that he had only $30 or $40. The police then recovered from the defendant's person $307, mostly $20 bills. Trochio testified that the packets in the paper bag were packaged to sell for $20.

The defendant claims that *State* v. *Alfonso*, supra, 195 Conn. 624, and *State* v. *Chisolm*, 165 Conn. 83, 328 A.2d 677 (1973), are factually similar cases that support his claim of insufficient evidence. We disagree.

In *Chisolm*, drugs and packaging materials were found in a bin in the cellar of a three-family house owned by the defendant. The defendant had not lived in the building for the previous ten years and had rented out the three apartments to tenants. In the four years preceding his arrest, the defendant had been seen in the cellar and had been seen walking toward the bin. The tenants also had access to the cellar and keys to unlock the cellar door. A key to the padlock on the bin was found on the defendant's person when he was arrested for another offense. The tenants were uncertain, however, whether their keys also fit the padlock on the bin.

The *Chisolm* court held that the evidence was insufficient to support the defendant's conviction. The court stated that "[n]o one saw the defendant with narcotics; no one saw the defendant in the bin; no one saw the defendant place anything in the bin or remove anything from it. No tenant testified that his or her key would not unlock the padlock on the bin and no testimony was offered which would establish that the defendant's key was the only key which would unlock the padlock on the bin." *State* v. *Chisolm*, supra, 165 Conn. 85.

In the present case, unlike in *Chisolm*, the defendant's brother testified that he gave keys to his apartment to only the defendant. In *Chisolm*, the court found it significant that there was no evidence to indicate that the defendant alone had access to the bin, or to clarify how many people had access to the bin. Here, only the defendant and his brother had access to the apartment. Moreover, the defendant's brother testified that he had no knowledge of the drugs until they were retrieved in the search. Thus, the evidence supported the reasonable inference that the defendant placed the drugs in the apartment.

In *Chisolm*, no one saw the defendant with narcotics. In this case, the police saw the defendant carry a brown paper bag into 265 Dixwell only one-half hour before they discovered 200 packets of heroin in a similar bag. When he was arrested, the defendant was carrying a key to the apartment and a beeper. The beeper box was found in the apartment where the drugs were seized. The defendant's first name and a note that either he owed or was owed heroin and cocaine was written on top of a box containing rubber bands used to package the narcotics. The defendant's wallet contained $307, mostly $20 bills, and the drugs were in $20 bundles. Moreover, the defendant attempted to deceive the police by lying about the amount of money in his wallet.

In *State* v. *Alfonso*, supra, 195 Conn. 624, the police found cocaine and marijuana during their search of the defendant's apartment, which he shared with two roommates who were not present during the search. The defendant admitted that the cocaine was his, but denied any connection with the marijuana. The court overturned the defendant's conviction for possession of marijuana because "[t]here was *no other circumstantial evidence* from which the jury could reasonably infer that the defendant was aware of the presence of the marijuana in the apartment." (Emphasis added.) Id., 634. Here, abundant circumstantial evidence tied the defendant to the narcotics found in apartment A-1.

The defendant claims that his conviction cannot be sustained because the state is unable to exclude the possibility that Daniels put the drugs into the bag. Daniels was never seen with the bag nor was the bag found on her person. Rather, two police officers recovered from her person nineteen packets containing heroin stamped with the words "raising hell" and nine packets of cocaine. Daniels did not have a key for the apartment and did not reside there. "[T]he requirement of proof beyond a reasonable doubt does not mean that the proof must be beyond a possible doubt, and a possible hypothesis or supposition of innocence is far different from a reasonable supposition. . . . Proof of guilt must exclude every reasonable supposition of innocence . . . ." (Internal quotation marks omitted.) *State* v. *Ford*, 230 Conn. 686, 693, 646 A.2d 147 (1994). Here, as in *Ford*, "[a]lthough the defendant's scenario was a possibility, the jury rejected it." Id., 695.

Finally, on this charge, the defendant claims that the bag was not the same bag that he was carrying and that it was possible Pipkin put the drugs into the bag. The jury, in "viewing evidence which could yield contrary inferences . . . is not barred from drawing those infer-

ences consistent with guilt and is not required to draw only those inferences consistent with innocence." *State* v. *Sauris*, 227 Conn. 389, 399–400, 631 A.2d 238 (1993). The jury could reasonably conclude that the bag carried by the defendant was the same bag found in the apartment and was free to credit Pipkin's testimony denying any knowledge of the drugs.

The defendant also claims that there was insufficient evidence to convict him on the conspiracy charge. The second count, in part, alleges that the defendant on January 9, 1992, with the intent that conduct constituting the crime of sale of narcotics be performed, agreed with Pipkin, Daniels, Ford and Eudora Boyd to engage in or cause the performance of such conduct and any one of them committed an overt act in pursuance of such conspiracy. The defendant claims that the state proved neither an agreement nor an overt act.

The defendant first alleges that the state failed to prove the existence of an agreement, which is a necessary element in the crime of conspiracy. The existence of a formal agreement between the parties, however, need not be proved; it is sufficient to show that they are knowingly engaged in a mutual plan to do a forbidden act. *State* v. *Lewis*, 220 Conn. 602, 607, 600 A.2d 1330 (1991); *State* v. *Vessichio*, 197 Conn. 644, 656, 500 A.2d 1311 (1985), cert. denied, 475 U.S. 1122, 106 S. Ct. 1642, 90 L. Ed. 2d 187 (1986); *State* v. *Lynch*, 21 Conn. App. 386, 392, 574 A.2d 230, cert. denied, 216 Conn. 806, 580 A.2d 63 (1990). Because of the secret nature of conspiracies, a conviction is usually based on circumstantial evidence. *State* v. *Vessichio*, supra, 644. Consequently, it is not necessary to establish that the defendant and his coconspirator signed papers, shook hands, or uttered the words "we have an agreement." *State* v. *Stellato*, 10 Conn. App. 447, 453, 523 A.2d 1345

(1987). Indeed, a conspiracy can be inferred from the conduct of the accused. *State* v. *Lynch,* supra, 400.

Finally, "[t]he size of a defendant's role does not determine whether that person may be convicted of conspiracy charges. Rather, what is important is whether the defendant willfully participated in the activities of the conspiracy with knowledge of its illegal ends." *United States* v. *Vanwort,* 887 F.2d 375, 386 (2d Cir. 1989), cert. denied sub nom. *Chapoteau* v. *United States,* 495 U.S. 906, 110 S. Ct. 1927, 109 L. Ed. 2d 290 (1990). Participation in a single act in furtherance of the conspiracy is enough to sustain a finding of knowing participation. *United States* v. *Vanwort,* supra, 386; *United States* v. *Zabare,* 871 F.2d 282, 287 (2d Cir.), cert. denied, 493 U.S. 856, 110 S. Ct. 161, 107 L. Ed. 2d 119 (1989).

The state argues that there was abundant evidence from which the jury could infer an agreement between the defendant and Pipkin, the defendant and Daniels, or the defendant and both Pipkin and Daniels. The state claims the following evidence evinced an agreement.

Pipkin testified that he gave the defendant the key to his apartment while he was hospitalized. During the investigation prior to January 9, the investigating officers watched the defendant use a key to enter the building on numerous occasions. The defendant's unlimited access to the apartment continued after Pipkin's return from the hospital. Moreover, the drugs were found in Pipkin's apartment after his return. In addition, the police found items indicative of drug trafficking, such as the beeper box and the note on the box top, in Pipkin's apartment. From this evidence, the state claims, it was reasonable to infer that the defendant and Pipkin had agreed that the defendant could use Pipkin's apartment as the base for his narcotics operation. It was also reasonable to infer that this agreement

was made either when Pipkin first gave the defendant the key to his apartment before he went into the hospital or after Pipkin returned from the hospital and the defendant's unlimited access to the apartment continued.

Pipkin also testified that both he and the defendant were friends with Daniels. When Pipkin arrived home on the morning of January 9, he saw the defendant leaving the building and found Daniels in his apartment. Pipkin had previously testified that the defendant was the only other person with a key to his apartment. Thus, it was reasonable to infer that the defendant had informed Daniels that he would be at Pipkin's apartment on the morning of January 9 and would let her into the apartment. Moreover, the narcotics found in the bag and the narcotics seized from the person of Daniels were stamped with the identical logo. This supports the reasonable inference that the defendant carried the bag into the apartment, admitted Daniels, and gave her packets of narcotics to sell, which she placed in her purse. The state claims that the actions of the defendant, Pipkin and Daniels show a coordinated plan to use apartment A-1 as a base for selling narcotics. The state, however in count one alleges that the defendant had the narcotics in the paper bag that he brought to the apartment as Pipkin was leaving.

The only evidence showing a connection between Pipkin and the defendant prior to that was that Pipkin gave the defendant a key to the apartment when he went into the hospital. Pipkin left the hospital the day before the search. Pipkin testified that he did not see the paper bag when he left on the morning of January 9 and that it was there when he returned, as was Daniels. The defendant was not there. The only person who had a key, other than Pipkin, was the defendant. Pipkin denied any knowledge of the presence of drugs in his apartment or that he had any dealings with drugs with

his brother or that he had any knowledge of what went on in his apartment while he was in the hospital. The jury did not have to believe Pipkin, but there was no affirmative evidence to the contrary and the jury was not free to believe the opposite. *State* v. *Alfonso*, supra, 195 Conn. 634.

The evidence against Daniels is that she did not have a key to the apartment and that she was not there when Pipkin left but was there when he got back. Narcotics were found in the paper bag and identical narcotics were found on her. She was a friend of Pipkin and the defendant. The only reasonable inference that could be made is that the defendant let her into the apartment. How Daniels got the drugs, whether she stole them, got them from the defendant or had them on her person when she came, is a matter of speculation not inference. Possession of the drugs is sufficient for proof of the overt act in a conspiracy. *State* v. *Walton*, 227 Conn. 32, 48, 630 A.2d 990 (1993).

In order to prove the conspiracy, the state must demonstrate that this was an agreement between two or more coconspirators *followed* by an overt act in furtherance of the conspiracy by any one of the coconspirators. General Statutes § 53a-48.[5] Here, we find no proof of an agreement. There is no prior evidence of any day-to-day activity at Pipkin's apartment and no proof of any activity by anyone with Daniels except testimony that she was a friend of Pipkin and the defendant. Mere presence at the scene of a crime, even with knowledge of the crime, is insufficient to establish guilt of a conspiracy. *State* v. *Lynch*, supra, 21 Conn. App. 392; *State* v. *Stellato*, supra, 10 Conn. App. 454.

In *State* v. *Sweeney*, 30 Conn. App. 550, 557–59, 621 A.2d 304 (1993), we found there was sufficient evidence to support a conspiracy where the evidence established

---

[5] See footnote 2.

that the defendant knew of drug activity in her house, knew money given to her came from drug activity, purchased plastic bags used in drug activity and drug activity pervaded the entire residence. None of these elements was proved in this case. Also, in *State* v. *Boykin*, 27 Conn. App. 558, 564–65, 609 A.2d 242, cert. denied, 223 Conn. 905, 610 A.2d 179 (1992), we found there was sufficient evidence of agreement where the defendant watched and talked with the dealer during transactions and was handed money after several such transactions. Here, we have possession of narcotics by Daniels and the defendant but no probative evidence from which a prior agreement between the defendant and Pipkin, between the defendant and Daniels or between the defendant, Pipkin and Daniels could be inferred. As to the other two names in the information, there was no probative evidence to include them as part of any conspiracy.

We conclude that there was insufficient evidence to find the necessary agreement for a conspiracy.

## II

The defendant next claims that the trial court incorrectly gave a *Secondino* charge when it was not warranted and that the trial court incorrectly instructed the jury on consciousness of guilt. Neither of these claims was preserved and the defendant acknowledges that *State* v. *Ramirez*, 16 Conn. App. 284, 289–90, 547 A.2d 559, cert. denied, 209 Conn. 828, 552 A.2d 434 (1988), controls on the reviewability issue. In *Ramirez*, we said: "The defendant acknowledges that no request to charge was submitted on this issue . . . or an exception taken after the giving of the charge; therefore, our review of this claim is limited to a determination of whether plain error exists." Plain error is reserved for extraordinary situations where the existence of the error is so obvious that it affects public confidence in

the fairness and integrity of judicial proceedings. Id., 290. Neither claim reaches that level and we decline to review them.

## III

The defendant next claims that the trial court's charge was incorrect because it failed to instruct the jury that if the defendant was not in exclusive possession of the premises that there must be additional incriminating statements or circumstances buttressing the inference of possession. The defendant did not request this charge but claims review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We conclude that the defendant cannot prevail because under the third prong of *Golding*, the alleged constitutional violation did not clearly exist and did not clearly deprive the defendant of a fair trial. The trial court gave a thorough definition of the terms "possession" and "constructive possession." The court properly informed the jurors that they could not find that the defendant possessed the narcotic substance unless they concluded that he "knew of its presence, and that he exercised dominion and control over it." *State* v. *Alfonso*, supra, 195 Conn. 633. Viewing this instruction as a whole, we find this instruction gave the jury "a clear understanding of the elements of the crime charged and the proper guidance to determine if those elements were present." *State* v. *Salz*, 26 Conn. App. 448, 455, 602 A.2d 594 (1992), aff'd, 226 Conn. 20, 627 A.2d 862 (1993).

## IV

The defendant's last claim is that the trial court improperly allowed into evidence marijuana seized at the defendant's residence because it constituted prior misconduct evidence. The defendant objected but did not state the grounds nor are they in the record. There is nothing to indicate that the defendant objected on

the grounds asserted on appeal or that the trial court ruled on those grounds.

Appellate review of evidentiary rulings is limited to the specific legal ground raised by the objection of counsel at trial. *State* v. *Harrison*, 34 Conn. App. 473, 482, 488, 642 A.2d 36, cert. denied, 231 Conn. 907, 648 A.2d 157 (1994); see also Practice Book §§ 288 and 4185. A specific objection is necessary to alert the trial court to purported error while there is time to correct it without ordering a retrial and to permit the opposing party to argue against the objection at trial. *State* v. *Christiano*, 228 Conn. 456, 464, 637 A.2d 382, cert. denied, 513 U.S. 821, 115 S. Ct. 83, 130 L. Ed. 2d 36 (1994); *State* v. *Sinclair*, 197 Conn. 574, 579, 500 A.2d 539 (1985). "To permit a party to raise a different ground on appeal than was raised during trial would amount to 'trial by ambuscade,' unfair both to the trial court and to the opposing party." *State* v. *Sinclair*, supra, 579.

In this case, as the defendant concedes, defense counsel merely objected to the introduction of evidence concerning the marijuana; he did not state any grounds for his objection. His failure to voice the grounds for his objection renders this claim unreviewable.

The judgment is reversed only as to the conviction of conspiracy to sell narcotics and the case is remanded with direction to render judgment of not guilty on that charge.

In this opinion the other judges concurred.