# WENDELL MINNIFIELD *v.* COMMISSIONER OF CORRECTION
## (AC 20108)

Lavery, C. J., and Schaller and Hennessy, Js.

Argued October 30, 2000—officially released February 27, 2001

*Katharine S. Goodbody*, special public defender, for the appellant (petitioner).

*Robin S. Schwartz*, special deputy assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Terence Mariani*, assistant state's attorney, for the appellee (respondent).

*Opinion*

LAVERY, C. J. The petitioner, Wendell Minnifield, appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus in which he alleged ineffective assistance of counsel. He claims that the court improperly determined that (1) his counsel's investigation prior to the petitioner's plea of guilty was not insufficient, (2) there was no basis for suppressing the confession of the petitioner, and counsel's decision not to file a motion to suppress the confession did not prejudice the petitioner, and (3) counsel did not misinform the petitioner regarding his sentence. We affirm the judgment of the habeas court.

The facts underlying the petitioner's arrest and claim of ineffective assistance of counsel are as follows. On June 21, 1995, the Waterbury police were called to investigate a motor vehicle accident and possible shooting. When they arrived, they found the victim, a thirty year old male, in the driver's seat of a vehicle that had struck a telephone pole, with a fatal gunshot wound to his left chest. Police later learned that the victim had been fighting with the petitioner's cousin. After the fight ended, the victim entered and remained inside his vehicle. The petitioner walked to the driver's side door and fired three shots at the victim, one of which entered his chest and resulted in his death. After the shooting, the victim tried to drive away, but sped into a telephone pole.

The petitioner, age sixteen at the time, was arrested the following day. He was advised of his rights and confessed to the murder in a written statement to the police. On June 25, 1996, the petitioner, represented by attorney Jayne Kennedy, pleaded guilty to murder in the first degree in violation of General Statutes § 53a-54a pursuant to the *Alford* doctrine.[1] Kennedy advised him to plead guilty. The court sentenced him to a term of imprisonment of forty years.

On February 11, 1999, the petitioner filed an amended petition for a writ of habeas corpus, alleging ineffective assistance of counsel by Kennedy. The court denied the petition and granted certification to appeal. This appeal followed.

We must first consider our standard of review. "In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Fuller* v. *Commissioner of Correction*, 59 Conn. App. 302, 303, 755 A.2d 380, cert. denied, 254 Conn. 943, 761 A.2d 760 (2000).

"A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel . . . ." *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 153, 662 A.2d 718 (1995). In *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective

---

[1] See *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). "A defendant who pleads guilty under the *Alford* doctrine does not admit guilt, but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea." *Henry* v. *Commissioner of Correction*, 60 Conn. App. 313, 315 n.1, 759 A.2d 118 (2000).

assistance of counsel, he must show "that counsel's assistance was so defective as to require reversal of [the] conviction . . . ." That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. Id.; see also *Henry* v. *Commissioner of Correction*, 60 Conn. App. 313, 316–17, 759 A.2d 118 (2000). "Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." (Internal quotation marks omitted.) *Henry* v. *Commissioner of Correction*, supra, 317, citing *Strickland* v. *Washington*, supra, 687; see also *Fair* v. *Warden*, 211 Conn. 398, 402, 559 A.2d 1094, cert. denied, 493 U.S. 981, 110 S. Ct. 512, 107 L. Ed. 2d 514 (1989); *Aillon* v. *Meachum*, 211 Conn. 352, 357, 559 A.2d 206 (1989).

The first component of the *Strickland* test, generally referred to as the performance prong, requires that the petitioner "show that counsel's representation fell below an objective standard of reasonableness." (Internal quotation marks omitted.) *Aillon* v. *Meachum*, supra, 211 Conn. 357. In *Strickland*, the United States Supreme Court held that "[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a [petitioner] to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption

that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Internal quotation marks omitted.) *Henry* v. *Commissioner of Correction*, supra, 60 Conn. App. 317–18.

"Even if a petitioner shows that counsel's performance was deficient, the second prong, or prejudice prong, requires that the petitioner show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . In the context of a guilty plea, our Supreme Court has stated: [T]he petitioner must show that such a decision to plead not guilty would have been based on the likelihood that the introduction of the evidence for the defense that was not identified because of ineffective assistance of counsel would have been successful at trial. . . . [The United States Supreme Court stated that in] many guilty plea cases, the prejudice inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate . . . the determination whether the error prejudiced the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." (Citation omitted; internal quotation marks omitted.) Id., 318.

With that standard of review in mind, we examine each of the petitioner's claims. Additional facts will be discussed as necessary for the resolution of each claim.

I

The petitioner first claims that Kennedy was ineffective in failing to independently interview and investigate witnesses. Specifically, the petitioner claims that he would not have pleaded guilty had he been informed that two witnesses could have offered evidence contradicting that of the state's key witness, Antonia Curling. The petitioner further claims that he was prejudiced by Kennedy's failure to investigate the possible bias of Curling, namely, whether she had criminal charges pending against her, and whether she disliked him because he dated her sister. We disagree.

The following additional facts are necessary for our resolution of this claim. Mark Askew and Donna M. Franco gave statements to the police regarding their eyewitness accounts of the shooting.[2] Both stated that on June 21, 1995, at about 11 p.m. or 11:30 p.m., while riding in a vehicle in the area of North Main Street, they saw a black male wearing a black or blue visor, a flowered shirt and dark colored pants point a gun and shoot three times at a white male in the driver's seat of a beige, parked car. The witnesses stated that they drove around the block and that when they returned, they saw that the beige car had struck a telephone pole.

Curling, an owner of a business on North Main Street, also witnessed the shooting. She provided a statement that indicated that the victim and another male had been arguing on a street corner at approximately 11 p.m., and that the petitioner, whom she knew as Wen-

---

[2] Franco's statement is dated June 21, 1995, and Askew's statement is dated June 22, 1995.

dell, had been at the scene. She stated that the petitioner saw the fight and ran briefly into an alley. When he returned to find the fight over, he questioned her as to the victim's whereabouts, to which she responded that she did not know. When he saw the victim's car, he walked around it to the driver's side and shot the victim "at least two times, point blank." She further stated that the petitioner was wearing a white visor and white pants at the time of the shooting, but that afterward, he returned to the alley and emerged wearing a dark colored hood over his head and dark pants.

At the habeas trial, Kennedy testified that she did not share the statements of Askew or Franco with the petitioner, nor did she recall having reviewed them. The court concluded, however, that the petitioner was not prejudiced by Kennedy's actions. We agree with the court.

As we have stated, the second prong of the *Strickland* test requires the petitioner to show that he was prejudiced by counsel's inadequate representation. Our review of all three statements reveals that those of Askew and Franco corroborate the statement of Curling. All three place a black male, approximately nineteen years old, at the scene of the shooting. Each statement further provides that the male walked to the driver's side of a beige car and fired a weapon at the victim approximately three times at point blank range. The only discrepancies in the statements involve the description of the petitioner's clothing and hairstyle. Although Curling said that the perpetrator was wearing a white visor and white pants at the time of the shooting, the other two witnesses said that he was wearing a dark blue or black visor and dark pants. Askew and Franco stated that the perpetrator had dreadlocks, whereas Curling stated, "I believe he has a sort of Afro style." We note that all of the witnesses saw the petitioner wearing a visor and that Curling said that he had

changed into dark colored clothing shortly after the shooting. Curling also knew the petitioner by name and positively identified him.

In light of the minor discrepancies in the witnesses' statements, the petitioner's confession and Kennedy's testimony that her plea recommendation would not have changed if she had reviewed the statements of Askew and Franco, we conclude that the petitioner has failed to show that "discovery of the evidence would have led counsel to change his recommendation as to the plea." *Hill* v. *Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985).

Kennedy could not recall at the habeas trial if she or her investigator had questioned Curling. In light of the fact that Curling's statement corroborates the petitioner's confession, we cannot conclude that Kennedy's failure to further examine the accuracy of Curling's statement was prejudicial to the petitioner. Moreover, the petitioner did not present evidence to show that had Kennedy investigated Curling's potential bias, she would have changed her plea recommendation. See *Copas* v. *Commissioner of Correction*, supra, 234 Conn. 156–57. We therefore conclude that the petitioner did not meet his burden under *Strickland* because he failed to show prejudice resulting from Kennedy's performance.

## II

The petitioner next claims that Kennedy's performance was ineffective because she failed to file a motion to suppress his confession. The court found that Kennedy's failure to file a motion to suppress was not so deficient as to prejudice the petitioner. We agree with the court.

As we have stated, the *Strickland* test requires the petitioner to show that counsel's performance was defi-

cient and that it was prejudicial. *Strickland* v. *Washington,* supra, 466 U.S. 687. "A reviewing court can find against the petitioner on whichever ground is easier." (Internal quotation marks omitted.) *Walton* v. *Commissioner of Correction,* 57 Conn. App. 511, 518, 749 A.2d 666, cert. denied, 254 Conn. 913, 759 A.2d 509 (2000).

In this case, the petitioner failed to present any evidence to the habeas court that, had a motion to suppress been filed, his confession would have been suppressed. Moreover, in light of the fact that Curling named the petitioner as the perpetrator and two other witnesses also placed at the scene of the shooting a young man whose description matched that of the petitioner, we cannot conclude that even if the confession had been suppressed, the outcome would have been different.

We therefore conclude that the court properly found that the petitioner failed to show sufficient prejudice because he did not prove that the outcome would have been different had Kennedy filed a motion to suppress the confession.

### III

The petitioner next argues that the court improperly denied his claim that Kennedy grossly misadvised him regarding the collateral effect of his sentence. We disagree.

The petitioner testified that when he entered the plea of guilty on the basis of what Kennedy had told him, he expected that he would have to serve only half of the forty year sentence because of his age. Kennedy, on the other hand, testified that although she could not remember exactly what she told the petitioner, she was sure that he would have to serve at least 85 percent of his sentence and that she did not tell him that he would have to serve only 50 percent of his sentence. With respect to this claim, the court found that the petitioner

"failed to present any credible evidence that he received ineffective counsel."

The habeas court is the "sole arbiter of the credibility of witnesses and the weight to be given to their specific testimony. . . . It is the right of the trier of fact to draw reasonable and logical inferences from the facts that it finds to be proved. . . . We cannot substitute our judgment for that of the habeas court." (Citations omitted.) *Johnson* v. *Commissioner of Correction*, 36 Conn. App. 695, 703, 652 A.2d 1050, cert. denied, 233 Conn. 912, 659 A.2d 183 (1995).

Because nothing in the record supports the petitioner's contention that Kennedy told him that he would only have to serve half of his sentence, we conclude that the court properly found that her performance was not ineffective.

The judgment is affirmed.

In this opinion the other judges concurred.