STANLEY GOODRUM *v.* COMMISSIONER OF
CORRECTION
(AC 19413)

Lavery, C. J., and Foti and Daly, Js.

Argued March 1—officially released May 8, 2001

*Sandra J. Crowell*, deputy assistant public defender, for the appellant (petitioner).

*Denise B. Smoker*, assistant state's attorney, with whom, on the brief, was *Michael Dearington*, state's attorney, for the appellee (respondent).

*Opinion*

DALY, J. The petitioner, Stanley Goodrum, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. He claims on appeal that the court improperly failed to find that his trial counsel was ineffective because (1) counsel made errors (a) in his cross-examination of a prosecution witness, (b) by failing to request a jury instruction and (c) by failing to take exception to two jury instructions, (2) counsel advised him to plead guilty to one of the charges against him and failed to object properly when

evidence of the plea was introduced at trial, (3) counsel failed to raise the petitioner's drug dependency as a defense at trial and (4) a conflict of interest resulted from counsel's simultaneous representation of a codefendant, which the trial court failed to inquire about. We affirm the judgment of the habeas court.

The factual background of this case is set forth in *State* v. *Goodrum*, 39 Conn. App. 526, 665 A.2d 159, cert. denied, 235 Conn. 929, 667 A.2d 554 (1995). Therein, on direct appeal, we upheld the petitioner's conviction of possession of a narcotic substance with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), possession of marijuana in violation of General Statutes § 21a-279 (c) and five counts of violation of probation. Thereafter, the petitioner sought a writ of habeas corpus. The court denied his petition in a memorandum of decision dated November 18, 1996.

In each of his claims before the court, the petitioner alleged that his trial counsel had, in some way, been ineffective. Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. "In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Holley* v. *Commissioner of Correction*, 62 Conn. App. 170, 172, 774 A.2d 148 (2001).

"A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel . . . . In *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show

'that counsel's assistance was so defective as to require reversal of [the] conviction . . . .' That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." (Citations omitted; internal quotation marks omitted.) *Minnifield* v. *Commissioner of Correction*, 62 Conn. App. 68, 70–71, 767 A.2d 1262, cert. denied, 256 Conn. 907, 772 A.2d 596 (2001); see *Phillips* v. *Warden*, 220 Conn. 112, 132, 595 A.2d 1356 (1991).

"The first component of the *Strickland* test, generally referred to as the performance prong, requires that the petitioner show that counsel's representation fell below an objective standard of reasonableness. . . . In *Strickland*, the United States Supreme Court held that [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a [petitioner] to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exer-

cise of reasonable professional judgment." (Citation omitted; internal quotation marks omitted.) *Minnifield* v. *Commissioner of Correction*, supra, 62 Conn. App. 71–72.

"Even if a petitioner shows that counsel's performance was deficient, the second prong, or prejudice prong, requires that the petitioner show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) Id., 72. Therefore, "[a] habeas court deciding an ineffective assistance of counsel claim need not address the question of counsel's performance, if the claim may be disposed of on the ground of an insufficient showing of prejudice." *Williams* v. *Commissioner of Correction*, 41 Conn. App. 515, 519, 677 A.2d 1 (1996), appeal dismissed, 240 Conn. 547, 692 A.2d 1231 (1997).

With those standards in mind, we will examine each of the petitioner's claims in turn. Additional facts will be set forth as necessary.

I

The petitioner first claims that his counsel made a number of errors at trial, each of which amounted to ineffective assistance pursuant to the standards of *Strickland*.

A

The petitioner claims that his counsel was ineffective because, when cross-examining a state's witness, he elicited testimony unfavorable to the petitioner. We disagree.

At trial, the state called Detective Thomas Trochio of the New Haven police department in its case-in-chief. Trochio testified that, while conducting surveillance at 265 Dixwell Avenue, he saw the petitioner enter that

building carrying a brown paper bag and that, when the petitioner exited the building, he no longer had the bag. The police subsequently entered the building, specifically, the apartment of the petitioner's brother within, and discovered a large amount of what was later determined to be cocaine and heroin. The drugs were in a brown paper bag bearing a McDonald's restaurant logo.

On cross-examination, the petitioner's counsel questioned Trochio about the specifics of the brown paper bag. In answering, Trochio testified that the bag he saw the petitioner carrying looked similar to the bag in which the drugs were found. Particularly, he testified that both bags had color on them.[1] On redirect examination, Trochio added that the bags appeared to be the same size. Similarly, in response to another question from the petitioner's counsel, Trochio testified that rubber bands found at 265 Dixwell Avenue were of a similar type to those found at 377 Shelton Avenue, where the petitioner lived and was arrested. The petitioner claims that those questions evidence his counsel's ineffectiveness because they had the effect of causing the jury to draw a connection between the petitioner and the drugs found at his brother's residence. We are not convinced.

We think it clear that the state, in its direct examination of Trochio, elicited testimony implying that the witness saw a similarity between the bag held by the

---

[1] The testimony at issue was as follows:

"Q. And when you say that [the petitioner] had a brown bag with him when you saw him both instances that day?

"A. Yes, sir.

"Q. You weren't able to identify it being the same bag that you found up there, were you?

"A. It appeared similar, yes, sir.

"Q. You couldn't see 'McDonald's'?

"A. I saw some color. It was not a brown plain bag, there was something on it; I couldn't make out what it was."

petitioner and the bag found at 265 Dixwell Avenue and, additionally, between the two sets of rubber bands. We note that it is likely that the jurors, presumably competent individuals, already appreciated the connections the state intended to draw between the various items before the petitioner's counsel began questioning the witness. Any reinforcement of the idea brought out on cross-examination was minimal or cumulative at best. Further, as we concluded in the petitioner's direct appeal, there was ample additional evidence before the jury that connected the petitioner to the drugs he was found to have possessed.

The petitioner, therefore, has failed to show that the challenged line of questioning by his counsel prejudiced him in any way. Further, in that Trochio's answer also conveyed that he was unable to see the McDonald's logo on the bag carried by the petitioner, the testimony arguably was favorable to the petitioner. Keeping in mind that our standard of review requires us to indulge a "strong presumption" that counsel's questions were shaped by reasonable professional judgment, without the "distorting effects of hindsight," they easily could be considered "sound trial strategy." (Internal quotation marks omitted.) *Minnifield* v. *Commissioner of Correction,* supra, 62 Conn. App. 71–72. As such, we cannot say that they amounted to ineffective assistance of counsel. We agree, therefore, with the court's judgment that the petitioner, in making his claim, failed to satisfy either prong of *Strickland.*

## B

The petitioner also claims that his counsel was ineffective in failing to request a jury instruction on exclusive possession of the drugs at issue pursuant to *State* v. *Alfonso,* 195 Conn. 624, 490 A.2d 75 (1985). We disagree.

The drugs that the petitioner was convicted of possessing were not found on his person. As a consequence,

the state had to establish at trial that he constructively possessed the drugs. Further, the drugs were found in a location to which both the petitioner and other people had access. Our Supreme Court in *Alfonso* "established the principle that a jury may not infer possession of illegal drugs solely from a person's presence on premises where drugs are found, if the person is not in exclusive possession of such premises." *State* v. *Nesmith*, 220 Conn. 628, 635, 600 A.2d 780 (1991). "Where the defendant is not in exclusive possession of the premises where the narcotics are found, 'it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference.' " *State* v. *Alfonso*, supra, 195 Conn. 633. The petitioner claims ineffectiveness in his counsel's failure to request a jury charge explaining that principle.

We addressed that issue in the petitioner's direct appeal within the framework of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[2] because the issue was unpreserved at trial.[3] We held that the third prong of *Golding* was unsatisfied because "[t]he trial

---

[2] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

[3] Practice Book § 42-16 provides that "[a]n appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of exception. The exception shall be taken out of the hearing of the jury."

court gave a thorough definition of the terms 'possession' and 'constructive possession','' and "properly informed the jurors that they could not find that the defendant possessed the narcotic substance unless they concluded that he 'knew of its presence, and that he exercised dominion and control over it'.'' *State* v. *Goodrum,* supra, 39 Conn. App. 542. We further held that the charge overall "gave the jury 'a clear understanding of the elements of the crime charged and the proper guidance to determine if those elements were present.' '' Id.

Had the petitioner's counsel requested the exclusive possession charge and the court refused to give it, we would have employed the well settled standard of review on direct appeal to assess whether the charge that was given was adequate. "When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is . . . whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . [this court] will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Corbin,* 61 Conn. App. 496, 507, 765 A.2d 14 (2001).

"In reviewing the charge as a whole, the instructions need not be perfect, as long as they are legally correct, adapted to the issues and sufficient for the jury's guidance. . . . The test to be applied to any part of a charge is whether the charge, considered in its entirety, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) Id., 507–508. "[I]n appeals involving a constitutional question, [the stan-

dard is] whether it is reasonably possible that the jury [was] misled." (Internal quotation marks omitted.) *State v. Valinski,* 254 Conn. 107, 119–20, 756 A.2d 1250 (2000).

If we had more explicitly applied the previously discussed standard to the charge given to the jury in this case, we would have arrived at the same result. Because, as we found in the petitioner's direct appeal, there was ample additional testimonial and circumstantial evidence connecting him to the drugs, it is not reasonably possible that the jury found the element of possession satisfied solely because the petitioner had been present at the location where the drugs were found. The petitioner has not demonstrated that injustice resulted from the lack of an exclusive possession charge and that he was, consequently, prejudiced by his counsel's failure to request the desired charge.

We agree, therefore, with the court that the petitioner did not receive ineffective assistance of counsel because of the failure of counsel to request a specific charge on exclusive possession of the drugs at issue.

C

Last, the petitioner claims that his counsel was ineffective because he failed to take exception to two jury instructions requested by the state. See footnote 3. We disagree.

The petitioner claims that his counsel was ineffective in failing to except to the court's giving of a *Secondino*[4]

---

[4] "The failure to produce a witness for trial who is available and whom a party would naturally be expected to call warrants an adverse inference instruction against the party who would be expected to call that witness. *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 674–75, 165 A.2d 598 (1960)" *State* v. *Santangelo,* 205 Conn. 578, 596, 534 A.2d 1175 (1987). We note that subsequent to the petitioner's criminal trial, our Supreme Court abandoned the "missing witness rule" of *Secondino* in criminal cases. *State* v. *Malave,* 250 Conn. 722, 738, 737 A.2d 442 (1999) (en banc), cert. denied, 528 U.S. 1170, 120 S. Ct. 1195, 145 L. Ed. 2d 1099 (2000). The petitioner does not argue that *Malave*'s holding should apply retroactively to his case.

charge.[5] At trial, the petitioner's counsel introduced evidence that suggested that the petitioner, at the time he was being watched by the police, was at 265 Dixwell Avenue to visit his son, rather than at his brother's apartment where the drugs were found. The petitioner's son apparently lived in a different unit within the same building. It was determined at the close of evidence that the petitioner's son had been present in the courtroom during the trial. The petitioner's counsel, however, declined to call him as a witness. As a result, the state requested and the court agreed to give a *Secondino* charge. The petitioner's counsel did not except to that charge. Accordingly, in the petitioner's direct appeal, we limited our review of whether the charge was improper to a search for plain error and found that none existed.

The habeas court held that had the issue been properly preserved and considered by this court in the petitioner's direct appeal, it would not have resulted in a reversal of the judgment of conviction. In other words, the petitioner failed to show that he suffered prejudice as a result of his counsel's actions, as required under the second prong of *Strickland*. We agree with the habeas court.

The prerequisites to the giving of a *Secondino* instruction are twofold. First, it must be shown that the party

---

[5] The petitioner also claims that his counsel was ineffective in "inviting" the *Secondino* charge. We take that to mean that counsel was ineffective in failing to call the petitioner's son as a witness. "[C]omplaints that trial counsel failed to call certain witnesses are not favored because the presentation of testimonial evidence is a matter of trial strategy. . . . The failure of defense counsel to call a potential defense witness does not constitute ineffective assistance unless there is some showing that the testimony would have been helpful in establishing the asserted defense." (Citation omitted; internal quotation marks omitted.) *Chace* v. *Bronson*, 19 Conn. App. 674, 680–81, 564 A.2d 303, cert. denied, 213 Conn. 801, 567 A.2d 832 (1989). The petitioner made no showing to the habeas court that his son's testimony would have been helpful in establishing the petitioner's defense, nor does he make any such argument in his appellate brief.

who declined to call the witness was in fact able to procure that witness' physical presence in court, i.e., the witness was available. Second, under the facts of the case, it must be shown that the witness was one whom that party naturally would be expected to have testify. *State* v. *Wood*, 208 Conn. 125, 140, 545 A.2d 1026, cert. denied, 488 U.S. 895, 109 S. Ct. 235, 102 L. Ed. 2d 225 (1988); 1 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 65 (b). Here, the parties do not dispute that the petitioner's son was present in court and, therefore, was available to testify. Further, insofar as the petitioner was claiming that he had been at 265 Dixwell Avenue to visit his son and had not been at his brother's apartment where the drugs were seized, it naturally was expected that he would have called his son to the witness stand to verify the visit. The court's instruction, therefore, was proper and would have been upheld on appeal had the petitioner's counsel taken exception to it.

The petitioner also claims error in his counsel's failure to except to the court's charge to the jury on consciousness of guilt. See footnote 3. When the petitioner was arrested, he had $307 on his person. The police asked him how much money he had, and the petitioner stated that it was only $30 or $40. At trial, the state introduced testimony regarding that exchange. The court gave the jury an instruction on consciousness of guilt, directing the jurors as to how they might interpret the petitioner's false statement.[6] As part of the charge,

---

[6] With regard to evidence of an accused's consciousness of guilt, "[i]t is relevant to show the conduct of an accused, as well as *any* statement made by him subsequent to an alleged criminal act, which may be inferred to have been influenced by the criminal act." (Emphasis in original; internal quotation marks omitted.) *State* v. *Aleksiewicz*, 20 Conn. App. 643, 652, 569 A.2d 567 (1990). When such evidence is admitted and "is sufficient for a jury to infer from it that the defendant had a consciousness of guilt, it is proper for the court to instruct the jury as to how it can use that evidence." Id. "[A] misstatement of a suspect to police officers is admissible against him in a later prosecution because it permits the jury to draw the reasonable inference that the misstatement was made in an attempt to avoid detection

the court used the phrase, "guilty connection," a phrase that the petitioner claims would have been reversible error had he preserved it for appellate review.[7]

The habeas court held that had the issue properly been preserved and considered by this court in the petitioner's direct appeal, it would not have resulted in a reversal of the judgment of conviction. As with the *Secondino* charge, the petitioner failed to show that he suffered prejudice as a result of his counsel's failure to except to the charge. We agree with the habeas court.

The petitioner cites no case law in support of the proposition that the court's use of the phrase "guilty connection" in a consciousness of guilt instruction is an error mandating automatic reversal of a judgment of conviction. In fact, our Supreme Court in *State* v.

for the crime." (Internal quotation marks omitted.) *State* v. *Banks*, 194 Conn. 617, 621–22, 484 A.2d 444 (1984).

[7] The full text of the court's charge on consciousness of guilt was as follows: "There is also another legal principle that applies in this case, I'm not sure it was referred to in argument, called consciousness of guilt. Certain conduct of a person may be considered by you to show a guilty knowledge or consciousness of guilt. When a person is on trial for a criminal offense it is proper to show his conduct as well as any declarations made by him subsequent to the alleged criminal offense which may fairly have been influenced by that act. The state here claims that the [petitioner], Mr. Goodrum, made certain statements to the police on January 9th, 1992, at the time he was arrested concerning the amount of money on his person. I believe the evidence was from the police officer that [the petitioner] told the police officer he had thirty or forty dollars in his pocket, and when he was arrested and searched it turned out he had over three hundred dollars. The state claims that his statements to the police were false. Now, if you find that the [petitioner] did make false statements to the police, *you may find that such statements tend to show a guilty connection by the [petitioner] with the crimes charged.* In other words, any statements made by the [petitioner] subsequent to the alleged criminal act, which are shown to be false, you may fairly infer guilty knowledge influenced by the criminal act itself. Such statements when shown to be false are circumstantial evidence of guilty conscience and have independent probative force. But remember, it's up to you as judges of the facts to decide whether these statements or conduct on the part of the [petitioner] were, first of all, false, and, second, whether they reflect consciousness of guilt." (Emphasis added.)

*Francis*, 228 Conn. 118, 635 A.2d 762 (1993), rejected that very claim. After stating the well established principle that jury instructions are to be considered in their entirety rather than be critically dissected, the court in *Francis* held that "the instruction as a whole identified a permissive inference of consciousness of guilt that the jury might draw from the defendant's false statement, an item of circumstantial evidence," rather than a forced conclusion. (Internal quotation marks omitted.) Id., 133; see also *State* v. *Adams*, 225 Conn. 270, 289, 623 A.2d 42 (1993).

Here, as in *Francis*, the court's charge was otherwise "thorough and proper." *State* v. *Francis*, supra, 228 Conn. 133. As with the instruction challenged in *Adams*, "the language 'guilty connection' did not mandate that the jury find that the facts about which the defendant had made the false statements were conclusively established. Rather, the instruction as a whole identified a permissive inference of consciousness of guilt that the jury might draw from the defendant's false statement, an item of circumstantial evidence." *State* v. *Adams*, supra, 225 Conn. 289. The petitioner makes no attempt to distinguish those cases and to show how his claim would have fared differently on appeal. We therefore agree with the habeas court that the petitioner has failed to show that he was prejudiced by his counsel's failure to take exception to the trial court's consciousness of guilt charge.

II

The petitioner next claims that he was denied effective assistance when his counsel advised him to plead guilty before trial to the count of possession of marijuana in violation of § 21a-279 (c), with the understanding that the marijuana would not be introduced into evidence at trial. Further, he claims counsel was ineffective for failing to state the basis of his objection when

the marijuana subsequently was introduced into evidence. We disagree.

When searching the residence at 377 Shelton Avenue, where the petitioner was arrested, the police found more than $1550, a jacket similar to one the petitioner was seen wearing earlier in the day at 265 Dixwell Avenue, six packets of marijuana, and a tray containing marijuana residue and seeds. *State* v. *Goodrum,* supra, 39 Conn. App. 530. Before trial on the charges of which he was convicted, the petitioner agreed to plead guilty to possession of marijuana. When accepting his plea of guilty on the marijuana charge, the court canvassed the petitioner and advised him of the consequences of the plea, including that it could, subsequently, be admitted into evidence against him. The petitioner, in response, indicated that he understood. At trial, the marijuana was admitted into evidence without the petitioner's counsel objecting.[8] The petitioner now claims that he agreed to the plea on the incompetent advice of counsel. Particularly, he complains that the seized marijuana was introduced into evidence at his trial when he believed that, because of the plea, it would not be introduced. He argues that the admission of the marijuana changed the outcome of his trial.[9] We disagree.

To prevail on his claim, the petitioner must demonstrate prejudice. He must show that he would not have pleaded guilty on the marijuana charge but for the advice of counsel, that the evidence of the seized marijuana would have been ruled inadmissible at trial but for counsel's actions and that the admission of the evidence changed the outcome of the trial. That he has not done.

---

[8] More accurately, the petitioner's counsel failed to object on a particular ground. He did raise a general objection, which the court overruled.

[9] The sentences that the petitioner received for possession of marijuana and the resulting violation of his probation are to run concurrently to the sentence he received for violating General Statutes § 21a-278 (b). As such, the petitioner does not argue that he received additional prison time because of counsel's advice on the plea.

First, the petitioner cannot show that, but for his counsel's assurance that the marijuana would be inadmissible at trial, he would not have agreed to the guilty plea on the marijuana charge. That is because the court, when accepting the plea, clearly conveyed to him the fact that evidence of his guilty plea could be admitted at trial.

Second, even if the petitioner's counsel had raised a specific objection, the evidence regarding his possession of the marijuana still would have been admissible at trial. Evidence of other misconduct, as a general rule, is not admissible to show that a criminal defendant likely is guilty of the charges for which he is being tried. *State* v. *Ramsundar*, 204 Conn. 4, 15, 526 A.2d 1311, cert. denied, 484 U.S. 955, 108 S. Ct. 348, 98 L. Ed. 2d 374 (1987). Such evidence, "however, may be allowed for the purpose of proving many different things, such as *intent*, identity, malice, *motive* or a system of criminal activity." (Emphasis in original; internal quotation marks omitted.) Id. "Such evidence is admissible if the trial court, in the exercise of its sound discretion, determines that its probative value, for one or more of the purposes for which it is admissible, outweighs its prejudicial impact on the accused." Id. Here, the trial court properly allowed the state to introduce evidence of the marijuana to establish that the petitioner intended to run a drug operation from 265 Dixwell Avenue and 377 Shelton Avenue.[10]

Last, as we held in the petitioner's direct appeal, much other evidence was introduced at trial to prove the petitioner's guilt, including the testimony of police and the petitioner's brother, and the petitioner's connections to various items seized at 265 Dixwell Avenue.

---

[10] If the petitioner had not pleaded guilty to the marijuana charge, he would have been tried on that charge as well. In that case, the marijuana evidence surely would have been admitted.

Therefore, we cannot say that the marijuana was a decisive factor in the verdict.

The evidence concerning the marijuana likely would have been admissible irrespective of whether the petitioner had pleaded not guilty or whether a proper objection had been advanced. Additionally, even if it were not admitted, there remained ample other evidence to support the petitioner's conviction of possession of a narcotic substance with intent to sell. Therefore, the court correctly determined that the petitioner failed to show that he suffered prejudice as a result of his counsel's actions, as required by the second prong of *Strickland.*

## III

The petitioner next claims that the court improperly failed to find that his counsel was ineffective in failing to advance the petitioner's drug dependency as a defense at trial. We disagree.

The petitioner was convicted of possession of narcotics with intent to sell by a person who is not drug-dependent in violation of § 21a-278 (b).[11] Drug dependency is an affirmative defense to a charged violation under that statute. Thus, a drug-dependent defendant may be exempt from liability under § 21a-278 if he or she proves that dependency by a preponderance of the evidence. *State* v. *Hart,* 221 Conn. 595, 607–11, 605 A.2d 1366 (1992). A person exempt from liability under § 21a-278 by virtue of drug dependency still may be held liable under § 21a-277, which proscribes similar conduct.

---

[11] General Statutes § 21a-278 (b) provides in relevant part: "Any person who . . . possesses with the intent to sell or dispense . . . any narcotic substance, hallucinogenic substance other than marijuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. . . ."

"The difference between these statutes is not in their elements but in the potential mandatory minimum sentence provision of § 21a-278 (b). If the defendant does not prove by a preponderance of the evidence that he is drug-dependent, he is subject to the mandatory minimum sentence of § 21a-278 (b), whereas, if he proves that he is drug-dependent, the mandatory minimum sentence does not apply." *State* v. *Little*, 54 Conn. App. 580, 585, 738 A.2d 195 (1999). "The design and effect of § 21a-278 (b) is to punish persons who are not drug-dependent and sell narcotics more severely than drug-dependent persons who sell narcotics." (Internal quotation marks omitted.) *State* v. *Vasquez*, 53 Conn. App. 661, 666, 733 A.2d 856, cert. denied, 250 Conn. 922, 738 A.2d 662 (1999).

The petitioner presented evidence to the habeas court that tended to show that he has been drug-dependent for many years and that he had communicated as much to his counsel. He claimed, therefore, that his counsel was ineffective in failing to put forth his drug dependency as a defense at trial. The habeas court found that, in regard to that claim, the petitioner had failed to satisfy both prongs of *Strickland*. The court apparently was persuaded by testimony suggesting that counsel's choice not to pursue a drug dependency defense was a reasonable tactical decision.[12] We agree with the habeas court.

A defendant facing a charge, pursuant to § 21a-278, of possession with intent to sell by a person who is not drug-dependent may pursue different strategies on defense. He may, as did the petitioner, argue that the

---

[12] At the habeas proceedings, the petitioner's expert witness, initially, questioned defense counsel's failure to pursue a drug dependency defense at trial. In response to questioning from the state's attorney and the court, the witness acknowledged the difficulties inherent in such a defense in a jury trial and conceded that it was "entirely possible" that the choice not to pursue it was a tactical decision by defense counsel.

element of possession was unproven. He may, alternatively or additionally, present evidence of his drug dependency which, if proven, may be rebutted by the state. If the defense is successful to the extent that the state fails to prove the element of possession, the defendant will be fully acquitted. A defendant who fails to negate the state's proof on the element of possession, but who puts forth unrebutted evidence of his own drug dependency, still may be subject to conviction under § 21a-277, a lesser offense included within § 21a-278. See *State* v. *Bradley*, 60 Conn. App. 534, 545, 760 A.2d 520, cert. denied, 255 Conn. 921, 763 A.2d 1042 (2000). If the state proves possession and the defendant fails to prove drug dependency, the defendant faces conviction under § 21a-278.

Faced with those alternative possible outcomes, it is not unreasonable for counsel to choose to defend only on the element of possession, risking a mandatory minimum sentence, but with the aim of full acquittal. Moreover, pursuing both defenses simultaneously is a risky approach when the defendant is being tried before a jury in that there is some degree of inconsistency in acknowledging one's dependency on drugs but denying having engaged in sales to support that dependency. The risk is that a jury perceiving inconsistency in various defense theories may, as a result, find the entire defense case incredible. *State* v. *Shabazz*, 246 Conn. 746, 764–65, 719 A.2d 440 (1998), cert. denied, 525 U.S. 1179, 119 S. Ct. 1116, 143 L. Ed. 2d 111 (1999); *State* v. *Person*, 236 Conn. 342, 359, 673 A.2d 463 (1996) (*Borden, J.*, concurring).

Keeping in mind the presumptions on review that "the challenged action might be considered sound trial strategy" and that "counsel . . . made all significant decisions in the exercise of reasonable professional judgment"; (internal quotation marks omitted) *Minnifield* v. *Commissioner of Correction*, supra, 62 Conn.

App. 71–72; we hold that the petitioner's counsel's decision not to pursue a defense of drug dependency at trial did not render his assistance ineffective.

## IV

The petitioner's final claim is that his counsel's representation of both him and an alleged coconspirator, Ruth Ford, resulted in an actual conflict of interest that adversely affected counsel's performance and that the trial court's failure to inquire about the alleged conflict requires automatic reversal of the judgment of conviction. We disagree.

At the time of his arrest, the petitioner was living at 377 Shelton Avenue with his girlfriend, Ford. The police also arrested Ford and charged her with possession of a controlled substance and conspiracy to sell narcotics. The petitioner and Ford retained the same counsel to represent them in their respective cases. The petitioner went to trial first. Counsel obtained continuances on Ford's case and expended no other efforts on her behalf, since he believed that the state would not pursue the charges against her. At trial, the petitioner called Ford as his first witness. The court, noticing that her attorney of record was also the petitioner's attorney, called the situation "intolerable" and immediately appointed a special public defender to represent her.

Pursuant to the state[13] and federal[14] constitutions, "a criminal defendant is entitled to be represented by an attorney free from conflicts of interest." (Internal quotation marks omitted.) *State* v. *Webb*, 238 Conn. 389, 417, 680 A.2d 147 (1996). The test for an alleged conflict of interest differs from that for ineffective assistance claims generally. "In a case of a claimed [actual] conflict of interest . . . in order to establish a violation of [his

[13] See Conn. Const., art. I, § 8.
[14] See U.S. Const., amend. VI.

constitutional rights], the [petitioner] has a two-pronged task. He must establish (1) that counsel actively represented conflicting interests and (2) that an actual conflict of interest adversely affected his lawyer's performance." (Internal quotation marks omitted.) *State* v. *Crespo*, 246 Conn. 665, 689, 718 A.2d 925 (1998), cert. denied, 525 U.S. 1125, 119 S. Ct. 911, 142 L. Ed. 2d 909 (1999), citing *Phillips* v. *Warden*, supra, 220 Conn. 133.

"Cases involving conflicts of interest usually arise in the context of representation of multiple codefendants by one attorney where the attorney adduces evidence or advances arguments on behalf of one defendant that are damaging to the interests of the other defendant. . . . A conflict of interest also arises if trial counsel simultaneously represents the defendant and another individual associated with the incident and that representation inhibits counsel's ability to represent the defendant." (Citation omitted; internal quotation marks omitted.) *State* v. *Cruz*, 41 Conn. App. 809, 812, 678 A.2d 506, cert. denied, 239 Conn. 908, 682 A.2d 1008 (1996). "[O]ne of the principal safeguards of [the right to conflict free representation] is the rule announced by [our Supreme Court] that '[a trial] court must explore the possibility of conflict . . . when it knows or reasonably should know of a conflict . . . .' " *State* v. *Martin*, 201 Conn. 74, 79, 513 A.2d 116 (1986).

When the matter of the dual representation by counsel of both the petitioner and Ford was brought to the trial court's attention, it conducted an immediate inquiry and appointed a special public defender to represent Ford. Her testimony at the hearing revealed that, although counsel had been retained to represent both Ford and the petitioner, she in fact had never spoken with counsel and had been present only when he conversed with the petitioner. Counsel had requested continuances of her case on her behalf and nothing more.

Ford never discussed her case or the petitioner's case with counsel prior to the appointment of the special public defender to represent her. Her special public defender advised her not to testify, and the court advised her regarding her fifth amendment right not to incriminate herself. Nevertheless, she chose to testify and her testimony was very favorable to the petitioner. Ford's case subsequently was nolled.[15]

"We have had occasion to point out the caution from the United States Supreme Court that the *possibility* of conflict is insufficient to impugn a criminal conviction. . . . *Cuyler* v. *Sullivan*, [446 U.S. 335, 350, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980)]. To demonstrate an actual conflict of interest, the petitioner must be able to point to *specific instances* in the record which suggest impairment or compromise of his interests for the benefit of another party." (Emphasis in original; internal quotation marks omitted.) *Whyte* v. *Commissioner of Correction*, 53 Conn. App. 678, 689, 736 A.2d 145, cert. denied, 250 Conn. 920, 738 A.2d 663 (1999).

The petitioner in his brief only speculates as to the possibility that his counsel compromised his interest for Ford's benefit. He argues that counsel would have pursued a drug dependency defense if he were not worried about incriminating Ford, but points to no evidence in the record in support of that assertion. As discussed in part III, counsel's choice in that regard reflects a reasonable trial strategy. The petitioner also contends that had there been no conflict, counsel would have "question[ed] . . . Ford's involvement" to prevent the petitioner from being "set up as the bad guy." There is no indication in the record, however, that Ford was involved in the drug operation in any way. As pre-

---

[15] Ford, a schoolteacher, shared a home with the petitioner for twelve years at the time of trial and, by all accounts, had nothing to do with the drug operation the petitioner was accused of running.

viously mentioned, her case subsequently was nolled. Furthermore, because separate counsel was appointed for Ford prior to her taking the witness stand to testify, the petitioner's counsel was free to question her in any manner he saw fit. As such, the petitioner has not demonstrated a violation of his right to counsel predicated on an actual conflict of interest.

The judgment is affirmed.

In this opinion the other judges concurred.