[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioner filed a pro se habeas corpus petition on March 27, 2001, alleging unlawful confinement by reason of ineffective assistance of counsel by the petitioner's trial counsel. The petitioner, thereafter, was assigned court-appointed counsel, who filed a "First Amended Petition" on May 6, 2001 again alleging ineffective assistance of CT Page 10806 trial counsel. The respondent Warden filed a Return on May 13, 2002, responding to the petitioner's allegations.
The petitioner was arrested on March 12, 1999 and charged with violations of General Statutes § 53a-134 (a)(4), Robbery in the first degree and § 53a-92 (a)(2)(B), Kidnapping in the first degree. On April 20, 1999, the Public Defender's Office was appointed to represent the petitioner, and thereafter, the petitioner was assigned his trial counsel, who was acting in the capacity of a special public defender. On March 15, 2000, the petitioner entered pleas of guilty, pursuant to the Alford Doctrine, to one count of Robbery in the first degree, General Statutes § 53a-134 (a)(4), and one count of Conspiracy to commit Robbery in the first degree, General Statutes §53a-48 and § 53a-134 (a)(4). The petitioner's guilty pleas were canvassed by the court, Clifford, J. and were found to have been entered intelligently, knowingly and voluntarily with assistance of competent counsel and with a factual basis for the plea, and the petitioner's pleas were accepted. The court then sentenced the petitioner in accordance with the terms of the agreed upon plea agreement to seven years incarceration and three years special parole on each count, to run concurrent with each other. This resulted in a total effective sentence of 7 years incarceration and 3 years special parole. The petitioner remains in custody and incarcerated pursuant to that sentence.
The petitioner's First Amended Petition is in one count and alleges that his trial counsel "failed to adequately investigate the facts of the case." Specifically, the petitioner alleges that trial counsel (a) failed to investigate police surveillance of the petitioner's residence; (b) failed to investigate wiretapping of telephones at the petitioner's residence; (c) failed to investigate the improper processing and holding of the petitioner by the Hartford police between his arrest and arraignment; (d) failed to investigate the failure of the police to fingerprint the petitioner; (e) failed to locate and interview a witness whose testimony would have been favorable to the petitioner; and (f) failed to investigate the contradictions between statements obtained by the police and the condition of the jewelry that was central to the robbery charge. The petitioner further alleges that this failure by his trial counsel to adequately investigate the case resulted in trial counsel convincing the petitioner to accept trial counsel's advice to enter into the plea agreement of March 15, 2000, resulting in the petitioner's incarceration. It is the petitioner's position that this advice was inadequate and erroneous, due to the lack of investigation by trial counsel. As a result, the petitioner argues, his pleas of guilty on March 15, 2000 constituted a failure to assure that the petitioner's guilty pleas were knowingly, voluntarily, and intelligently entered, and but for trial counsel's "errors and omissions", it is reasonably probable CT Page 10807 that the result of the trial court proceedings would have been different. The petitioner requests that he be allowed to withdraw his guilty pleas; that his convictions be vacated; and that his case be restored to the docket for further proceedings. The matter was heard by the court on August 22, 2002. At the time of trial on the habeas corpus petition, the petitioner informed the court that he was abandoning his claims noted in (a), (b), (c) and (d) listed above and proceeded to offer evidence on the remaining portions of his claims. As the petitioner offered no evidence as to those claims shown in (a), (b), (c) and (d) this court finds that they have been abandoned by the petitioner and, thus, will not consider them.
"A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel. . . . In Strickland v. Washington,466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction. . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. . . ." Mezrioui v. Commissioner of Correction,66 Conn. App. 836 (2001).
"The first component of the Strickland test, generally referred to as the performance prong, requires that the petitioner show that counsel's representation fell below an objective standard of reasonableness. . . . In Strickland, the United States Supreme Court held that [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a [petitioner] to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise CT Page 10808 of reasonable professional judgment." (Citations omitted; internal quotation marks omitted.) Minnifield v. Commissioner of Correction,62 Conn. App. 68, 70-72, 767 A.2d 1262, cert. denied, 256 Conn. 907, 772 A.2d 596 (2001); Mezriouiv. Commissioner of Correction, supra at 837-38.
This matter was heard by the court on August 22, 2002. The petitioner appeared and testified that on the evening of March 6, 1999 he was at the residence of Ray Ramirez, the brother-in-law of the co-defendant Carmelo Ramirez, and that he and Carmelo Ramirez were drinking for approximately two hours. The petitioner and Carmelo Ramirez left the residence and proceeded to a store to buy additional liquor. The petitioner Vargas then observed Ramirez in an argument with the victim. The petitioner claims that when he attempted to intervene to break up the argument, Ramirez was in the process of removing the victim's necklace and a ring. Ramirez then handed these items to Vargas. The victim then fled the scene. Several moments later the police arrived causing Ramirez to run from the scene. While the police chased Ramirez and apprehended him, the petitioner Vargas walked away and went to his home. On March 12, 1999 when the petitioner was returning to his home, he was arrested by the police and charged with the criminal offenses noted herein. The petitioner was questioned by the police regarding a handgun allegedly used in the commission of the crimes, and the petitioner denied that he owned or possessed any guns, and he denied involvement in the incident on March 6, 1999. The petitioner testified that he informed trial counsel that Ray Ramirez, the brother-in-law of the co-defendant Carmelo Ramirez, could confirm that the petitioner was not in the possession of a handgun when the petitioner left the residence of Ray Ramirez shortly before the incident occurred on March 6, 1999. The petitioner also testified that he informed his trial counsel that the stolen necklace was alleged to have been damaged in the course of the robbery, but later photographs revealed that the necklace was not damaged. The petitioner wanted this alleged inconsistency investigated.
The petitioner testified that his trial counsel ignored his requests to interview Ray Ramirez or to investigate any inconsistency regarding the condition of the necklace. Instead he claims, his trial counsel repeatedly advised him to enter into a plea agreement, which the petitioner refused to do. On August 31, 2000, the petitioner refused a plea offer for a lesser sentence than that which he eventually received. He was canvassed by the court regarding his refusal of the plea agreement, and was notified by the court that the offer was being withdrawn.
Trial counsel reviewed the statements of the victim, the witnesses, the codefendant and the police report with the petitioner, as well as, CT Page 10809 photographs of the alleged stolen items, those being a gold necklace and two rings, in an effort to have the petitioner understand the strength of the case against him. The petitioner also admitted that his trial counsel informed him of the maximum sentences that he faced, should the petitioner be convicted at trial of the crimes charged. The matter was then scheduled for the commencement of jury selection on September 15, 2000. On said date, the petitioner acting with the advice of his counsel, reconsidered his position and accepted the sentence that has resulted in his present incarceration. The petitioner offered no expert witnesses to testify as to the ineffective assistance of his trial counsel.
The petitioner's trial counsel testified that he did not interview Ray Ramirez as the petitioner had suggested, as Ray Ramirez was not a witness to the crimes. He also stated that the petitioner was out of the sight of Ray Ramirez from the time the petitioner left the Ramirez home until the incident occurred. He also admitted that he did not pursue any investigation regarding the possibility of damage to the victim's necklace because of the strength of the evidence against the petitioner. He readily admits that he continually advised the petitioner to accept a plea bargain because of the overwhelming evidence against the petitioner, which he shared with the petitioner on several occasions.
A review of the exhibits offered at the habeas corpus trial reveals that an off-duty employee of the Corrections Department notified the police by telephone that the victim was being attacked and robbed by two males at 10:30 P.M. on March 6, 1999. The police arrived in several minutes and were advised by the victim that Carmelo Ramirez and another male had just robbed him of his jewelry and had threatened him with a small caliber silver/chrome gun. He then pointed out Ramirez to the police who apprehended Carmelo Ramirez after a short chase. Subsequently, the victim also identified Mario Vargas, the petitioner, as the second suspect involved in the robbery after reviewing a photo array.
Upon his arrest by the police, the co-defendant Carmelo Ramirez stated that Mario Vargas was in possession of a silver automatic handgun on the evening of March 6, 1999, and in fact, did threaten the victim with that gun in the course of robbing the victim that same evening. Ramirez stated that Vargas demanded the victim's jewelry while pointing the gun at the victim. He also stated that Vargas took possession of the victim's jewelry. Ramirez identified a police photo of the petitioner and stated that Vargas was his companion who robbed the victim.
A statement of a witness Angel Valentin was also offered into evidence. Mr. Valentin stated that on March 9, 1999, three days after the robbery, he purchased a necklace and two gold rings belonging to the CT Page 10810 victim from the petitioner for $100. He also stated that the petitioner offered to sell him a small chrome colored handgun for $200, but the Valentin refused to buy the gun. He further stated that the petitioner also possessed an additional gold chain matching the description of more jewelry stolen from the victim. Copies of photographs of the stolen jewelry items were also entered as exhibits at the habeas corpus trial.
The court finds that the petitioner has failed to establish that trial counsel rendered ineffective assistance of counsel in the course of representing the petitioner. In light of the strength of the case against the petitioner, the fact that he did not interview the co-defendant's brother-in-law regarding whether or not the petitioner was in possession of a handgun earlier in the evening of March 6, 1999, did not render trial counsel's representation ineffective. As to the condition of the victim's necklace, the court has reviewed all of the exhibits including statements, photographs and the police report and the court cannot determine from those exhibits that there was a claim that the necklace was damaged in the robbery. The statements and reports appear to indicate that under threat of physical harm, the victim along with the assistance of the petitioner removed the necklace by lifting it over his own head without any apparent damage to the necklace. These statements and reports appear to corroborate the accuracy of the photos showing the necklace in an undamaged condition.
The petitioner must also establish, that had he been tried to a jury, there is a reasonable probability that the results of the proceeding would have been different. Only by doing this, can he demonstrate prejudice. A review of the police report, victim's statement, the co-defendant's statement, the statements of two witnesses and the photographs of the jewelry reveal the strength of the state's case and leads this court to determine that there is no reasonable probability that the outcome would have been different had the petitioner's trial counsel proceeded differently, as claimed by the petitioner. The petitioner has not demonstrated prejudice from his counsel's alleged failure to adequately investigate the circumstances of the petitioner's case or that his counsel gave him inappropriate advice in recommending that the petitioner accept the plea agreement. Green v. Lynough,868 F.2d 176 (5th Cir.) (Per curiam), cert. denied, 493 U.S. 831,110 S.Ct. 102, 107 L.Ed.2d 66 (1989); Correll v. Thompson, 63 F.3d 1279 (4th Cir. 1995), cert. denied sub nom.; Correll v. Jabe, 516 U.S. 1035,116 S.Ct. 688, 133 L.Ed.2d 593 (1996).
The efforts of the petitioner's trial counsel fell well within the range of reasonable professional assistance of a competent trial lawyer. Accordingly, the petitioner's claims are hereby denied and his petition for a writ of habeas corpus is hereby dismissed. CT Page 10811
The Court
 by __________________ Arnold, J.